UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARCUS CAMERON, ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> STEVEN STEBBINS, ) <br> STEPHEN SAMSON, JOHN DOE, ) <br> BRYAN NOLAN, ) <br> MARK SQUIRES, ) <br> ENFIELD POLICE ) <br> DEPARTMENT, ) <br> STATE OF CONNECTICUT, ) <br> CONNECTICUT STATE POLICE ) <br> and the TOWN OF ENFIELD, ) <br> <u>Defendants                          </u> ) | CIVIL ACTION NO. 2:21-cv-165 <br><br><br> COMPLAINT AND DEMAND <br> FOR JURY TRIAL |

## INTRODUCTION

This claim arises out of the excessive use of force by officers in both the Connecticut State Police and Town of Enfield Police departments against the plaintiff, Marcus Cameron. The individual officers named in this lawsuit all had an active role in participating in the orchestration of not only filing false criminal charges against the plaintiff, but in attempting to abuse their power and authority as police officers to intimidate the plaintiff in order to prevent plaintiff from pursuing complaints against defendants Steven Stebbins and Stephen Samson with the Enfield and State Police departments.

1

## PARTIES

1. Plaintiff, Marcus Cameron, of Springfield, Massachusetts, is and was a resident of the Commonwealth of Massachusetts and the United States of America at all times referred to in this complaint.

2. Defendant, Steven Stebbins, is a natural person and resident of the State of Connecticut who, at all times alleged in this complaint, was employed as a police officer with the Connecticut State Police.

3. Defendant, Stephen Samson, is a natural person and resident of the State of Connecticut who, at all times alleged in this complaint, was employed as a police officer with the Connecticut State Police.

4. Defendant, John Doe, is a natural person and resident of the State of Connecticut who, at all times alleged in this complaint, was employed as a police officer with the Connecticut State Police.

5. Defendant, Mark Squires, is a natural person and resident of the State of Connecticut who, at all times alleged in this complaint, was employed by the City of Enfield as a police officer with the Enfield Police Department.

6. Defendant, Bryan Nolan, is a natural person and resident of the State of Connecticut who, at all times alleged in this complaint, was employed by the City of Enfield as a police officer with the Enfield Police Department.

7. Defendant, Town of Enfield, is a municipal corporation located within Hartford County, the State of Connecticut and the United States of America with its principal office located at 820 Enfield Street in Enfield, Connecticut.

8. Defendant, Enfield Police Department, is a duly incorporated municipality with a usual place of business located at 293 Elm Street in Enfield, Connecticut.

9. Defendant Connecticut State Police is part of Connecticut's Department of Emergency Services and Public Protection with a principal office of 111 Country Club Road in Middletown, Connecticut.

10. All individual defendants are being sued individually and in their official capacities.

11. At all times referred to in this complaint, defendants Steven Stebbins, Stephen Samson and John Doe were acting as employees, agents, or servants of the State of Connecticut.

12. At all times referred to in this complaint, defendants Bryan Nolan and Mark Squires were acting as employees, agents, or servants of the Town of Enfield.

13. At all times referred to in this complaint, the individual defendants were acting under color of state law.

14. At all times referred to in this complaint, the individual defendants were engaged in a joint venture.

## JURISDICTION

15. Plaintiff's action for violations of rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution is brought pursuant to the provisions of 42 U.S.C. § 1983.

16. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 (Federal Question), 1343 (Civil Rights) and 1332 (Diversity of Citizenship).

## VENUE

17. This action has been brought properly in the Hartford District Court for the District of Connecticut under 28 U.S.C §§ 1391(b)(1) and (2) in that the events at issue in this case arose and transpired in the Hartford Division of the District of Connecticut.

## FACTUAL ALLEGATIONS

18. The incidents giving rise to this action began on May 22, 2018, when defendant Stebbins, who lived in the same general area/neighborhood of plaintiff, came to plaintiff's front door at 49 Foxcroft Road in Enfield Connecticut, in plain clothes with a firearm on his hip, in full display.

19. Defendant Stebbins did not announce himself as a police officer, but rather walked up to plaintiff, on plaintiff's property approximately 20 yards from the public way and began complaining about plaintiff's driving speed in his neighborhood.

20. Plaintiff disputed defendant Stebbins' accusations about his driving and a verbal argument ensued, resulting in defendant Stebbins telling plaintiff that he came to talk to plaintiff "man to man" and that defendant Stebbins would "be back" and would "take care" of the plaintiff.

4

21. Plaintiff, who works as a probation officer in Massachusetts, had enough concern so as to ask defendant Stebbins to identify himself, which defendant Stebbins did not, and instead got in his vehicle and drove off at a high rate of speed.

22. Plaintiff, after feeling threatened by the statements made by defendant Stebbins, took down defendant Stebbins' license plate and called 911.

23. Plaintiff was connected with the Connecticut State Police, who informed him that the license plate was in fact Connecticut State Police Trooper Steven Stebbins, who lived down the street from plaintiff at 44 Foxcroft Road in Enfield, Connecticut.

24. The following day, plaintiff filed a complaint against defendant Stebbins with a Lieutenant Eric Cook of the Connecticut State Police.

25. On May 26, 2018, defendant Stebbins called 911 stating that plaintiff was driving over the speed limit.

26. Plaintiff was not driving over the speed limit, but rather specifically drove at a slow speed, as he encountered defendant Stebbins' wife, who made a feigned attempt to pretend to cross the road while plaintiff was driving past 44 Foxcroft Road so that defendant Stebbins might orchestrate the 911 call, making it seem as though plaintiff was driving "dangerously".

27. Plaintiff saw an Enfield Police cruiser at 44 Foxcroft shortly after his encounter with defendant Stebbins' wife.

28. The cruiser waited at 44 Foxcroft, then proceeded to pull out at the same time that plaintiff's guest was leaving and followed plaintiff's guest's vehicle.

29. Plaintiff then began to record and follow the cruiser that was following his guest's vehicle.

30. A detective, not a patrol officer, was in the cruiser.

31. Detective "Castle" of the Enfield Police Department, then drafted a police report, stating as fact (which he did not personally observe) that plaintiff was driving at a high speed and that he followed plaintiff's guest.

32. Plaintiff emailed Lieutenant Cook of the Connecticut State Police regarding this orchestrated event by defendant Stebbins and Detective "Castle" on May 27, 2018.

33. On May 28, 2018, defendant Stebbins drove past plaintiff's residence multiple times very slowly, glaring at plaintiff and his guest each time he drove by, in a clear effort to use his position as a police Trooper to intimidate plaintiff and plaintiff's guest.

34. On May 30, 2018, as plaintiff was driving down the road, defendant Stebbins began making hand motions outside of his house to another unknown white male, who then went in the middle of the road to attempt to yell at plaintiff.

35. Plaintiff then went to the Enfield Police Department to report this incident and met with defendant Squires.

36. Defendant Squires took plaintiff's information and did not pursue harassment charges, despite plaintiff requesting that he do so.

37. On June 21, 2018, plaintiff observed defendant Stebbins following his vehicle for a considerable amount of time while driving in the Town of Enfield.
38. Defendant Stebbins ran plaintiff's license plate number through the State Police database without any reason to do so, in an effort to intimidate plaintiff.
39. On June 25, 2018, plaintiff met with defendant Samson, who was the assigned investigator for plaintiff's complaint with the Connecticut State Police.
40. During this meeting, defendant Samson encouraged plaintiff to change the substance of plaintiff's complaint and told plaintiff not to pursue the complaint, that plaintiff could be prosecuted for lying if he did not, and that defendant Samson was a "bulldog" with his investigations.
41. Plaintiff refused to succumb to defendant Samson's blatant attempts at intimidation and suppression and would not withdraw his complaint.
42. Defendant Samson, then began working with defendant Stebbins (the subject of the investigation) to intimidate plaintiff.
    a. Defendant Stebbins admitted to "Googling" plaintiff in order to find his employment information and present it to defendant Samson;
    b. Defendant Samson made several calls to plaintiff's place of employment, which was the Probation office of the Springfield District Court in Massachusetts. These calls were made very early in the

      morning, before the court opened, so that defendant Samson would then leave a message for plaintiff's boss;

    c. In one message left to plaintiff's boss, defendant Samson forgot to hang up the telephone, and he can be heard with defendant Stebbins (the subject of the investigation) in the background, along with John Doe (believed to be Todd Gauvin), stating that plaintiff should "change his tune" now that they have called his boss and then mockingly stated that plaintiff would most likely complain that they were going after plaintiff "because he is black".

43. On July 8, 2018, defendant Stebbins fabricated a story about plaintiff and called 911, stating that plaintiff was in front of his home and providing videos that showed nothing of the sort to defendant Squires.

44. On July 15, 2018, defendant Stebbins came onto plaintiff's property in plain clothes and wrote down the license plate number of a vehicle on plaintiff's driveway.

45. Defendant Stebbins then ran the plate of that vehicle without authorization or cause, pulling the information from the Connecticut State Police database.

46. On July 17, 2018, defendant Samson filed a complaint with plaintiff's employer, complaining that plaintiff did not reside in Massachusetts and could therefore not work for the Probation department.

47. Instead of investigating plaintiff's claims against defendant Stebbins, defendant Samson instead worked with defendant Stebbins to retaliate against plaintiff for filing his complaint against defendant Stebbins.

48. On July 20, 2018, plaintiff called defendant Samson and asked why defendant Samson was contacting his employer. Defendant Samson was evasive and again attempted to convince plaintiff to change and/or withdraw his complaint.

49. On August 7, 2018, plaintiff and a friend were driving in the friend's vehicle, and defendant Stebbins began following them and ran the license plate of that vehicle.

50. Later that day, while plaintiff was away, a different person called plaintiff stating that a Connecticut State Police vehicle was in his driveway.

51. On September 18, 2018, defendant Stebbins followed plaintiff's friend's vehicle again and ran the license plate of that vehicle.

52. On November 12, 2018, defendant Stebbins followed the plaintiff to the Brookside Plaza in Enfield Connecticut and descended on plaintiff with approximately eight local and state police officers, to include defendant Samson and defendant Nolan.

53. On scene, defendant Samson attempted to control defendant Nolan's investigation, asking him to call the Massachusetts State Police to see if plaintiff had an active license plate, because plaintiff shouldn't be working as a probation officer in Massachusetts if plaintiff did not have one.

54. After being seized and questioned, defendant Nolan let plaintiff go without any charges or accusations, making it clear that the whole intent of this operation was to get plaintiff fired.

55. At no point did there exist probable cause to seize the plaintiff during this encounter.

56. On November 13, 2018, defendant Stebbins filed a restraining order (ex parte) against plaintiff.

57. Defendant Stebbins restraining order, after a hearing, was denied.

58. On December 5, 2018, defendants Nolan and Squires knowingly filed affidavits in support of an arrest warrant for plaintiff that had no basis in reality for the clear purpose of assisting their colleague, defendant Stebbins.

59. This resulted in plaintiff's arrest on December 11, 2018 and subsequently resulted in numerous media outlets reporting that "Massachusetts Probation Officer was Arrested for Stalking", along with plaintiff's mug shot to go with the stories.

60. Defendants Samson and Stebbins achieved their goal, as plaintiff was suspended from his position on December 12, 2018.

61. The criminal case against plaintiff was dismissed after diversion.

62. Plaintiff never presented a threat to any of the defendants' safety, including defendant Stebbins, nor was any credible evidence ever presented to that effect.

63. Defendant Samson was supposed to be investigating plaintiff's claims against defendant Stebbins, but instead worked with defendant Stebbins to intimidate and harass plaintiff.

64. Defendants either participated or allowed the continued use of excessive force on plaintiff despite having an obligation and opportunity to prevent and/or stop it from occurring.

65. At all pertinent times, the Town of Enfield and its policymakers knew of their legal duty to train, supervise, monitor and discipline members of the Town's police force to observe the rights of persons, including their right to be free from the use of unconstitutional excessive force at the hands of the police.

66. At all relevant times, the guidelines established by the Town of Enfield, its police department and its policymakers, recognized the right of an individual to have various Constitutional rights, which should not be infringed upon by the Town of Enfield.

67. At all relevant times, the guidelines established by the State of Connecticut, the Connecticut State Police and its policymakers, recognized the right of an individual to have various Constitutional rights, which should not be infringed upon by the Connecticut State Police.

68. At all times, the Town of Enfield, its policymakers and the Enfield Police Department failed to monitor, train, supervise, control and discipline the individual Defendants in the use of force with such recklessness and gross

negligence as to manifest deliberate indifference to the right of persons, including the Plaintiff, to be free from excessive force.

69. At all times, the State of Connecticut, its policymakers and the Connecticut State Police failed to monitor, train, supervise, control and discipline the individual Defendants in the use of force with such recklessness and gross negligence as to manifest deliberate indifference to the right of persons, including the Plaintiff, to be free from excessive force.

### COUNT I – VIOLATION OF 42 U.S.C § 1983

70. Plaintiff repeats and re-alleges paragraphs 1-69 of this complaint.

71. The aforementioned actions and conduct of the defendants violated plaintiff's right to be free from an unreasonable seizure as guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution.

72. As a result of the above-described violation of rights, plaintiff suffered great pain of body and mind and was otherwise damaged.

### COUNT II – VIOLATION OF 42 U.S.C. § 1983 – EXCESSIVE FORCE

73. Plaintiff repeats and re-alleges paragraphs 1-72 of this complaint.

74. The aforementioned actions and conduct of the individual defendants violated Plaintiff's rights to be free from the use of unreasonable and excessive police force and summary punishment as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

75. As a result of the above-described violation of rights, plaintiff suffered great pain of body and mind and was otherwise damaged.

### COUNT III - VIOLATION OF 42 U.S.C. § 1983 – FAILURE TO RECRUIT, TRAIN, DISCIPLINE AND SUPERVISE
### (TOWN OF ENFIELD, ENFIELD POLICE DEPARTMENT, STATE OF CONNECTICUT and CONNECTICUT STATE POLICE)

76. Plaintiff repeats and re-alleges paragraphs 1-75 of this complaint.

77. Prior to May 22, 2018, defendants Town of Enfield and State of Connecticut developed and maintained policies or customs describing the appropriate conduct of its employees with reference to Constitutional rights of persons in the Town of Enfield.

78. Prior to May 22, 20018, defendants Enfield Police Department and Connecticut State Police adopted the policies and customs developed by the Town of Enfield and State of Connecticut.

79. The named defendants failed to adhere to said policies and customs and demonstrated a deliberate indifference on the part of the State of Connecticut, Connecticut State Police, Town of Enfield and the Enfield Police Department and were the cause of a violation of the plaintiff's rights alleged herein.

80. The State of Connecticut, Connecticut State Police, Town of Enfield and the Enfield Police Department have failed to maintain a minimally appropriate recruitment and training program to recruit and train Police Officers and supervisors to: refrain from abusing their authority by means of abusing

citizens and using excessive force, to profile and subsequently attack citizens based on race, to refrain from colluding or enabling officers to abuse their authority, to author honest and/or complete police reports and to diligently investigate.

81. As a direct and proximate result of the above-described violation of rights, plaintiff suffered great pain of body and mind and was otherwise damaged.

## COUNT IV – VIOLATION OF 42 U.S.C 1983
### (STATE OF CONNECTICUT AND TOWN OF ENFIELD)

82. Plaintiff repeats and re-alleges paragraphs 1-81 of this complaint.

83. Defendants, State of Connecticut and Town of Enfield, has drafted and implemented an unconstitutional policy by creating an atmosphere among all police defendants that has allowed the aforementioned actions.

84. Defendants, State of Connecticut and Town of Enfield, are directly responsible for policies that do not discourage its employees from falsely charging and illegally seizing citizens.

85. As a result of this status, defendants State of Connecticut and Town of Enfield had supervisory responsibility over all police defendants.

86. Defendants State of Connecticut and Town of Enfield, through its police department, have failed to appropriately recruit and train sworn officers in a manner that would prevent officers from falsely charging and illegally seizing its citizens.

87. As a result of the actions by the defendants, plaintiff suffered great pain of body and mind and was otherwise damaged.

## COUNT V – DEFAMATION *Per Se*
### (STEBBINS, NOLAN, SQUIRES and ENFIELD POLICE DEPARTMENT)

88. Plaintiff repeats and realleges paragraphs 1-87 of this complaint.

89. As set forth above and below, defendant Stebbins falsely made statements that the Plaintiff was speeding, drove "dangerously" and engaged in stalking.

90. As set forth above and below, Stebbins made these statements to a number of third persons, including other Connecticut State police officers, Enfield police officers and police dispatcher(s).

91. As set forth above and below, Enfield police officers Nolan and Squires knowingly wrote and filed false affidavits accusing the Plaintiff of stalking. These affidavits were filed in support of Stebbins' baseless application for a restraining order, which was denied after a hearing. Stebbins included falsehoods in his application for the restraining order.

92. Nolan and Squires are agents of the Enfield Police Department.

93. The Plaintiff did not engage in the behavior he was falsely accused of by Defendants.

94. The false accusations of Defendants resulted in the arrest of the Plaintiff for stalking, a crime that involves moral turpitude and/or which is punishable by imprisonment.

95. As set forth above and below, these false statements led to the suspension of the Plaintiff from his employment.

96. As set forth above and below, these false statements led to numerous media outlets publishing the false allegations against the Plaintiff.

97. The Plaintiff's reputation suffered serious injury as the result of Defendant's false statements. In addition to suffering embarrassment at the media attention, Plaintiff also suffered harm to his professional reputation and in fact was suspended from his job.

98. As a result of the Defendants' false statements, plaintiff suffered great pain of body and mind and was otherwise damaged.

WHEREFORE, plaintiff requests this Honorable Court enter judgment against the defendants jointly and severally on all counts of this complaint and:

    a) Award compensatory damages;

    b) Award punitive damages;

    c) Award interest and costs of this action to plaintiff;

    d) Award attorney fees to plaintiff; and

    e) Award such other relief which this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL**

Dated: February 9, 2021                  Respectfully submitted,

                                                      Plaintiff, by his attorneys:

| | |
|---|---|
| /s/ Michelle S. Cruz | /s/ Ryan P. McLane |
| Michelle S. Cruz, Esq. | Ryan P. McLane, Esq. |
| Law Offices of Michelle S. Cruz | McLane & McLane, LLC |
| 1380 Main Street, Suite 403 | 269 South Westfield |
| Springfield, MA 01103 | Feeding Hills, MA 01030 |
| (860) 415-6529 | (413) 789-7771 |
| Cruz4law@gmail.com | ryan@mclanelaw.com |
| Juris: CT29217 | Juris: CT31039 |