**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MARCUS CAMERON<br>*Plaintiff*<br><br>v.<br><br>STEVEN STEBBINS,<br>STEPHEN SAMSON, JOHN DOE,<br>BRYAN NOLAN, MARK SQUIRES,<br>ENFIELD POLICE DEPARTMENT,<br>STATE OF CONNECTICUT,<br>CONNECTICUT STATE POLICE,<br>AND TOWN OF ENFIELD<br>*Defendants* | : | CIVIL ACTION NO. 3:21CV00165 (OAW)<br><br><br><br><br><br><br><br><br><br><br><br>July 3, 2023 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STEVEN STEBBINS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Marcus Cameron filed this five-count Complaint on February 9, 2021. *See Doc. No. 1*. Plaintiff purports to assert claims against Defendant Steven Stebbins in Counts One, Two, and Five of the Complaint.[1] Count One asserts unreasonable seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C § 1983; Count Two asserts excessive force in violation of the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983; and Count Five asserts a defamation *per se* claim. Defendant Stebbins is a Connecticut State Trooper, and Plaintiff purports to assert official capacity and individual capacity claims against him. *Compl.,* ¶ 10.

The Court should grant Defendant's motion for summary judgment as to all claims against him. The relevant facts are discussed in the argument section below, with references to Defendant's Local Rule 56(a)(1) statement and Exhibits.

[1] Count Three purports to be a violation of 42 U.S.C. § 1983 against the Town of Enfield, Enfield Police Department State of Connecticut and Connecticut State Police. Count Four purports to assert a violation of 42 U.S.C. § 1983 against the State of Connecticut and Town of Enfield.

## Argument

### I. Summary Judgment Standard

Summary judgment allows the Court to dispose of factually unsupported claims. *Celotex Corp.,* 477 U.S. 317, 323-24 (1986). It is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327. The Court should grant summary judgment where—as here—"the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 322. On issues that Plaintiff will bear the burden of proof at trial, Defendant's burden can be "discharged by showing—that is, pointing out to the District Court—that there is an absence of evidence to support" Plaintiff's case. *Celotex,* 477 U.S. at 325. Indeed, Defendant "may obtain summary judgment by showing that little or no evidence may be found in support of" Plaintiff's case. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d. Cir. 1994).

Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The Court should grant summary judgment where Plaintiff's evidence is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Plaintiff's "conclusory statements or mere allegations" cannot defeat a summary judgment motion. *Frye v. Lagerstrom,* 2021 U.S. App. LEXIS 26646, at *5 (2d Cir. 2021). Finally, "a complete failure of proof concerning an essential element of [Plaintiff's] case necessarily renders all other facts immaterial. *Celotex,* 477 U.S. at 322-23.

## II. Defendant is Entitled to Summary Judgment on Plaintiff's 42 U.S.C. § 1983 Claim Against Him in his Official Capacity Because State Officials are Not "Persons" For Purposes of 42 U.S.C. § 1983.

The United States Supreme Court has expressly held that state officials acting in their official capacities are not "persons" under 42 U.S.C. § 1983. *Mercer v. Schriro*, 337 F. Supp. 3d 109, 136 (D. Conn. 2018) (Haight, J.)("[T]he United States Supreme Court explicitly held 'that neither a State nor its officials acting in their official capacities are 'persons' under § 1983'"); *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983"). Accordingly, Defendant Stebbins is entitled to summary judgment to the extent Plaintiff is asserting a § 1983 claim against him in his official capacity.

## III. Plaintiff's Claims Against Defendant Stebbins in his Official Capacity are Barred by the Eleventh Amendment.

Plaintiff's claims against Defendant Stebbins in his official capacity are also barred by the Eleventh Amendment. "It is well settled that the Eleventh Amendment bars suits for money damages against state officials acting in their official capacities." *Amato v. Elicker*, 534 F. Sup. 3d 196, 206 (D. Conn. 2021) (Shea, J.) (quotation marks omitted) (citing cases, including *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003)); *see also Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (similar); *Morabito v. New York*, 803 Fed. Appx. 463, 465 (2d Cir. 2000) (Amended Summary Order) (the Eleventh Amendment "bars damages claims brought against . . . individual state defendants in their official capacities"). Accordingly, the Court must dismiss Plaintiff's official capacity claims in their entirety.

As far as the § 1983 claims are concerned, "[i]t is well settled that § 1983 does not override Eleventh Amendment immunity." *Morabito v. New York*, 803 Fed. Appx. 463, 465 (2d

Cir. 2000) (Amended Summary Order). *See also See Bd. of Educ. v. Schutz*, 290 F.3d 476, 480 (2d Cir. 2002) (dismissing § 1983 claim against state official in his official capacity).

Similarly, Plaintiff cannot bring his defamation claim against Defendant Stebbins in his official capacity, because the State has not waived its immunity to this common law claim. *See, e.g., Tonina v. Dept. of Revenue Servs*., 2020 U.S. Dist. LEXIS 257326, *4 (D. Conn. 2020) (dismissing claim for defamation as barred by Eleventh Amendment and noting that Congress has not abrogated Connecticut's immunity to laws governing defamation); *Blige v. City Univ. of New York*, 2017 U.S. Dist. LEXIS 8354, *18 (S.D.N.Y. 2017) (holding state law claims against state officials, including defamation claim, were barred by Eleventh Amendment). Accordingly, the Court should grant summary judgment on Plaintiff's claims against Defendant Stebbins in his official capacity pursuant to the Eleventh Amendment.

## IV. Plaintiff's § 1983 Claims against Defendant Stebbins in His Individual Capacity are Barred by Qualified Immunity.

The Court should grant Defendant Stebbins' motion for summary judgment on Plaintiff's § 1983 claims because Defendant Stebbins has qualified immunity. Qualified immunity protects Defendant Stebbins from civil damages liability unless Plaintiff pleads facts that show (1) Defendant violated a constitutional right, and (2) the constitutional right was "clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011). The Court has the discretion to go straight to the second prong of the analysis. *Id.*

Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity allows government officials the breathing room to make reasonable, even if mistaken, judgments. *NRA of Am. v. Vullo,* 49 F.4th

700, 714 (2d Cir. 2022). Indeed, qualified immunity "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson,* 555 U.S. at 223.

A constitutional right is clearly established only when "it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna,* 577 U.S. 7, 11 (2015). The U.S. Supreme Court has instructed that "[s]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

Accordingly, when determining whether Defendant Stebbins' actions were prohibited by "clearly established law," the conduct cannot be defined at a "high level of generality." *Ashcroft*, 563 U.S. at 742. The Court must look at the particular situation that the officer confronted. *Mullenix*, 577 U.S. at 13. Existing Second Circuit or U.S. Supreme Court precedent must have placed the constitutional question "beyond debate," *Ashcroft,* 563 U.S. at 741, to ensure that "before they are subjected to suit, officers are on notice their conduct is unlawful." *Pearson,* 555 U.S. at 244. Ultimately, "the qualified immunity standard is forgiving and protects all but the plainly incompetent or those who knowingly violate the law." *Grice v. McVeigh,* 873 F.3d 162, 166 (2d. Cir. 2017). *See also Ashcroft,* 563 U.S. at 743 ("When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law'").

The qualified immunity defense is "often decided on motions for summary judgment." *NRA of Am. v. Vullo,* 49 F.4th 700, 714 (2d Cir. 2022). Indeed, the U.S. Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage

in litigation." *Pearson,* 555 U.S. at 232. Because qualified immunity is an immunity from suit—and not just liability—"it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* at 231.

Here, the undisputed facts—or Plaintiff's own version of the facts—show that Defendant has qualified immunity. *Rohman v. New York City Transit. Auth.,* 215 F.3d 208, 215 (2d. Cir. 2000) ("Whether [defendant] is protected by qualified immunity can be determined on the basis of plaintiff's version of the facts of the case"). The Court should grant Defendant Stebbins' motion for summary judgment.

**A. There is No Evidence that Defendant Personally Seized Plaintiff Within the Meaning of the Fourth Amendment and Even if He Did, Defendant Has Qualified Immunity.**

To hold Defendant Stebbins liable pursuant to § 1983, Plaintiff must "plead and prove the elements of the underlying constitutional violation directly against" him. *Tangreti v. Bachmann,* 983 F.3d 609, 620 (2d. Cir. 2020). Plaintiff claims there are two incidents where Defendant Stebbins violated his Fourth Amendment right against unreasonable seizures: (1) an encounter in Plaintiff's driveway on May 22, 2018, and (2) an incident on November 12, 2018. *Ex. Q: Plaintiff's Answers to Interrogatories,* p. 1-2.

**1. Defendant Stebbins' Conversation with Plaintiff on May 22, 2018 Was Not a Seizure for Purposes of the Fourth Amendment, and the Law Did Not Clearly Establish that it Was a Seizure.**

The May 22, 2018 encounter in Plaintiff's driveway was not a seizure within the meaning of the Fourth Amendment. The first step in "any section 1983 claim predicated on the Fourth Amendment is to determine whether there has been a constitutionally cognizable seizure." *Michigan v. Summers*, 452 U.S. 692, 696 (1981). Because there wasn't a seizure, the Fourth Amendment was not implicated. *United States v. Adegbite*, 846 F.2d 834, 837 (2d Cir. 1988) ("only if they were seized are defendants vested with any right to constitutional

safeguards"). Indeed, "[t]he Fourth Amendment prohibits unreasonable seizures; it is not a general prohibition of all conduct that may be deemed unreasonable, unjustified or outrageous." *Medeiros v. O'Connell*, 150 F.3d 164, 167 (2d Cir. 1998).

To qualify as a "seizure," there must be (1) physical force, or (2) an actual submission to police authority. *Brendlin v. California,* 551 U.S. 249, 254 (2007). Critically, "[t]here is no seizure without actual submission." *United States v. Baldwin*, 496 F.3d 215, 218 (2d Cir. 2007). Words alone do not create a seizure. *See Cal. v. Hodari D.,* 499 U.S. 621, 626-27 (1991). Moreover, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick,* 501 U.S. 429, 434 (1991). Instead, "a person is seized by the police and therefore entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin,* 551 U.S. at 254. Accordingly, "police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado,* 466 U.S. 210, 216 (1984). Defendant Stebbins—like anyone else—has the liberty to talk to people. *United States v. Mendenhall,* 446 U.S. 544, 553 (1980).

Factors that may indicate a seizure are "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person or the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *United States v. Mendenhall,* 446 U.S. 544, 554 (1980). But ultimately, "the coercive effect of the encounter can be measured . . . by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Brendlin,* 551 U.S. at 255.

Here, "none of the displays of authority typically evident in cases where seizures were held to have occurred were present." *United States v. Adegbite*, 846 F.2d 834, 838 (2d Cir. 1988) (finding that agents who "waved down and approached the ice cream truck in plain clothes and displayed no guns or badges" did not seize defendants). Defendant Stebbins was the only officer present. Defendant Stebbins parked his cruiser and walked up to Plaintiff wearing regular clothes. *56(a)(1)*, ¶ 10-11. He did not activate the lights on his cruiser. *56(a)(1),* ¶ 18. Defendant Stebbins told Plaintiff he just wanted to talk to him "man to man," and that he was not there to arrest him or to give him a ticket. *56(a)(1)*, ¶ 14. Plaintiff claims Defendant Stebbins said that Plaintiff was speeding and ran through two stop signs. *56(a)(1)*, ¶ 12. In return, Plaintiff accused Defendant Stebbins of using his cell phone while driving. *56(a)(1),* ¶ 13. Plaintiff then terminated the encounter by telling Defendant Stebbins to leave—and Defendant Stebbins left when Plaintiff told him to leave. *56(a)(1)*, ¶ 15.

Although Plaintiff claims that Defendant Stebbins said, "I'll be back" and "I'm going to take care of you"—which Plaintiff interpreted as threatening—that was at the end of the conversation when Defendant Stebbins was leaving, and did not cause Plaintiff to submit to his authority. *56(a)(1),* ¶ 16. *See Stevens v. Vill. Of Red Hook,* 2022 U.S. Dist. LEXIS 191989 (S.D.N.Y. 2022) (granting motion to dismiss because plaintiff did not plausibly allege a seizure where she alleged she was trapped inside her house by officers who used threats of violence to try to get her to come outside and leave with them); *Mandola v. Cnty. of Nassau*, 222 F. Supp. 3d 203, 218-219 (E.D.N.Y. 2016) ("The fact that Plaintiffs considered the Individual Defendants' responses to their inquiries to be laconic and rude does not elevate their actions to a seizure of Plaintiffs").

Indeed, Plaintiff's own description of the encounter shows Plaintiff was not submissive—he was defiant. *Oliphant v. Villano,* 2012 U.S. Dist. LEXIS 124175, at *15 (D. Conn. 2012) (Arterton, J.) (granting summary judgment to police officer on Fourth Amendment claim where record did not show that plaintiff submitted to a show of authority by defendant officer). *See also Scatorchia v. County of Suffolk,* 2006 U.S. Dist. LEXIS 5617, at *9 (E.D.N.Y. 2006) (holding that there was no Fourth Amendment seizure where the plaintiff left the defendant's presence and requested reassignment to a location away from the defendant). Even when Defendant Stebbins was walking away from him, Plaintiff told Defendant Stebbins to identify himself. *56(a)(1),* ¶ 17.

Defendant Stebbins never removed his firearm from its holster or pointed it at Plaintiff. *56(a)(1),* ¶ 86. The fact that Defendant Stebbins had a holstered firearm does not make this encounter a seizure. *United States v. Drayton*, 536 U.S. 194, 205 (2002) ("that most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon"). Moreover, Defendant Stebbins never physically touched Plaintiff. *56(a)(1),* ¶ 88.

Nevertheless, even if the Court were to determine that the May 22 interaction could be a "seizure" for purposes of the Fourth Amendment, Defendant Stebbins is entitled to qualified immunity because there is no U.S. Supreme Court or Second Circuit case that answers the question "beyond debate." Defendant Stebbins was not on fair notice that this conversation with his neighbor—where he did not bring Plaintiff under his control for questioning—would be considered a "seizure" for purposes of the Fourth Amendment. Indeed, there are cases involving far more egregious conduct that were not considered Fourth Amendment seizures. *Compare Garcia v. Cty. of Westchester*, 2017 U.S. Dist. LEXIS 191980, *78 (S.D.N.Y. 2017) (finding that

man was not seized within the meaning of the Fourth Amendment when officer fired into the windshield of the vehicle); *Bogart v. City of New York*, 2016 U.S. Dist. LEXIS 128350, *26 (S.D.N.Y 2016) (holding that plaintiff who alleged she was struck and knocked down by a police officer as retaliation was not a seizure because it "is not the kind of intentional acquisition of control by police that implicates the Fourth Amendment."). Defendant Stebbins is entitled to qualified immunity.

**2. Defendant Stebbins has Qualified Immunity for His Actions on November 12, 2018.**

Although Plaintiff claims that Defendant Stebbins conducted an unreasonable seizure on November 12, 2018, *Ex. Q: Plaintiff's Interrogatories,* pg. 1-2, it is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages pursuant to Section 1983." *Rosado v. Goshen,* 2019 U.S. Dist. LEXIS 51885, at * (S.D.N.Y. March 27, 2019) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994)). Upon a motion for summary judgment, Plaintiff must present evidence that shows Defendant Stebbins' own actions violated his Fourth Amendment right. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

As far as the November 12, 2018 incident is concerned, the evidence shows that Defendant Stebbins (1) contacted Defendant Samson, a Sergeant at the Connecticut State Police, *56(a)(1)*, ¶ 58; (2) called the Enfield Police upon the advice of Defendant Samson, *56(a)(1)*, ¶ 59, and (3) told Enfield Police officers where Plaintiff's car was parked, *56(a)(1),* ¶ 65, and told the Enfield Police his concerns. *56(a)(1),* ¶ 66. The facts show that the Enfield Police handled the stop—Defendant Stebbins did not know why Plaintiff wasn't charged that day, and Defendant Stebbins did not know what the Enfield Police had for evidence. *56(a)(1),* ¶ 75. Defendant Stebbins did not speak with Plaintiff. *56(a)(1),* ¶ 73.

It was not clearly established by the Second Circuit or the U.S. Supreme Court that Defendant Stebbins would violate Plaintiff's Fourth Amendment rights by calling the Enfield Police for assistance and remaining at the scene to speak with the police under these circumstances. The Second Circuit has stated that "prompt-on-the-scene confrontation is consistent with good police work." *United States ex rel. Cummings v. Zelker,*455 F.2d 714 (2d. Cir. 1972). Because Defendant Stebbins was being followed by someone he has had issues with, it makes sense that the situation is addressed and investigated as it was occurring. *See 56(a)(1),* ¶¶ 20, 22-26. Indeed, Plaintiff told Officer Croteau that there was a "long history" between them. *56(a)(1),* ¶ 32. Defendant Stebbins called the Enfield Police instead of attempting to handle the situation himself.

Nevertheless, the Fourth Amendment permits investigative stops based on reasonable suspicion: "when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California,* 572 U.S. 393, 396 (2014). This is an objective test—the constitutional reasonableness "does not turn on the subjective motivation of the officers involved." *Brace v. Johnson,* 2023 U.S. App. LEXIS3690, at *2 (2d. Cir. 2023) (Summary Order). *See also Gray v. Nordstrom*, 2021 U.S. Dist. LEXIS 38528, *9 (D. Conn. 2021) (Dooley, J.) (explaining that whether "reasonable suspicion exists is an objective inquiry; the actual motivations of the individual officers involved in the stop play no role in the analysis"). Here, Defendant Stebbins is entitled to qualified immunity "because at least some officers of reasonable competence" in Defendant Stebbins' position could have believed that the "stop in this case was within the bounds of appropriate police responses." *Harwe v. Floyd,* 545 Fed. Appx. 20, 23 (2d. Cir. 2013) (Summary Order).

"The reasonable suspicion standard is not high." *United States v. Weaver*, 9 F.4th 129, 140 (2d. Cir. 2021). Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence and obviously less than what is necessary for probable cause." *Navarette*, 572 U.S. at 397. Reasonable suspicion "takes into account the totality of the circumstances—the whole picture," and depends on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.,* at 397, 402. The Court "must permit officers to make commonsense judgments and inferences about human behavior." *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020). The U.S. Supreme Court has "consistently recognized that reasonable suspicion need not rule out the possibility of innocent conduct." *Navarette,* 572 U.S. at 403 (internal citations omitted).

Moreover, District of Connecticut courts have applied an "arguable reasonable suspicion standard" to the qualified immunity analysis. *See Ozga v. Elliot*, 150 F. Supp. 3d 178, 189 (D. Conn. 2015) (Meyer, J.) ("if the police conduct a limited investigative detention, they have qualified immunity so long as they had at least *arguable* reasonable suspicion to warrant the limited detention"); *Rivera v. Foley*, 2015 U.S. Dist. LEXIS 35639, *20 (D. Conn. 2015) (Bryant, J.) ("Plaintiff's operation of an unusual and likely unidentified device into a cordoned-off area at the scene of a major motor vehicle accident and ongoing police investigation provides arguable reasonable suspicion that Plaintiff was interfering with police activity"); *Jacobson v. Town of N. Haven*, 2006 U.S. Dist. LEXIS 73372, *19 (D. Conn. 2006) (Eginton, J.) ("As previously discussed, at least arguable reasonable suspicion existed to approach and question plaintiffs Jacobsons at the parking lot"); *Harwe v. Floyd*, 2011 U.S. Dist. LEXIS 25987, *41 (D. Conn. 2011) (Kravitz, J.) (Kravitz, J.) (noting that "cases decided by other federal Courts of Appeal suggest that the facts known to [police officer] are sufficient to give rise to at least arguably

reasonable suspicion"); *Goldberg v. Town of Glastonbury*, 2010 U.S. Dist. LEXIS 118243, *5 (D. Conn. 2010) (Underhill, J.) (finding that the evidence in the record established arguable reasonable suspicion for stop).

Indeed, the "arguable reasonable suspicion" standard is consistent with the "arguable probable cause" standard that the Second Circuit applies to arrests, where an arresting officer is entitled to qualified immunity from a suit for damages if he can establish that there was at least "arguable probable cause" to arrest. *Dubois v Cunningham,* 2022 U.S. App. LEXIS 16830, at *6 (2d Cir. 2022) (Summary Order) (citing *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). The arguable reasonable suspicion standard is consistent with the fact that qualified immunity protects officer's decision where it hasn't been established "beyond debate." *Ashcroft,* 563 U.S. at 741. As the U.S. Supreme Court has explained that "[w]hen properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law."

The undisputed facts show there was reasonable suspicion—and at the very least arguable reasonable suspicion—because Plaintiff appeared to be following Defendant Stebbins. Plaintiff admits he saw Defendant Stebbins drive by his house in his police cruiser. *56(a)(1)*, ¶ 37. Plaintiff got into his car immediately afterward and was behind Defendant Stebbins on Dover Road. 56(a)(1), ¶¶ 37-41. Defendant Stebbins turned left onto Colony Road, and Plaintiff turned left onto Colony Road behind him. *56(a)(1),* ¶ 42. When Defendant Stebbins pulled to the side of Colony Road, Plaintiff drove around him but pulled over in front of him. *56(a)(1),* ¶ 43. Defendant Stebbins went around Plaintiff and took a right onto Route 5. *56(a)(1),*¶ 44. Plaintiff continued driving and also took a right onto Route 5. *56(a)(1),* ¶ 45.

Plaintiff admits that he saw Defendant Stebbins turn right into a parking lot—and Plaintiff then turned left into a parking lot. *56(a)(1),* ¶ 46-47. Defendant Stebbins resumed driving on

Route 5, and pulled over onto the dirt shoulder of the entrance ramp to I-91. *56(a)(1),* ¶ 50. Plaintiff resumed driving on Route 5, and saw Defendant Stebbins sitting in the dirt shoulder of the entrance ramp to I-91. *56(a)(1),* ¶¶ 51-52. Plaintiff also went onto the entrance ramp to I-91, drove past Defendant Stebbins, and pulled over on the side of I-91. *56(a)(1),*¶¶ 54-55. Defendant Stebbins continued driving past Plaintiff on I-91. *56(a)(1),* ¶ 57. Defendant Stebbins got off an exit, and Plaintiff got off the same exit. *56(a)(1),* ¶ 60. Both Defendant Stebbins and Plaintiff ended up in Brookside Plaza. *56(a)(1),* ¶ 61.

It appeared Plaintiff was following Defendant Stebbins, and that he had pulled over multiple times to wait for him. Defendant Stebbins was a state trooper being followed by a citizen who had filed an Internal Affairs complaint against him and appeared to dislike him—and who, at the very least, Defendant Stebbins had issues with in the past. Defendant Stebbins didn't know what Plaintiff was going to do. Ultimately, "suspicious circumstances may have innocent explanations; but the availability of an innocent explanation does not create an issue of fact as to the reasonableness of the suspicion." *Holeman v. City of New London,* 425 F.3d 184, 191 (2d. Cir. 2005).

At the very least, Defendant Stebbins is entitled to qualified immunity. There is "no clearly established case law that holds that the combination of these facts is not enough" to establish reasonable suspicion. *Holeman v. City of New London,* 425 F.3d at 191. Moreover, there are some cases where courts held that police had reasonable suspicion when it appeared someone was being followed. *See United States v. Matthews,* 330 Fed. Appx. 364, (3d. Cir. 2009) (unpublished) (police officer concerned for his safety had reasonable suspicion to stop a car occupied by criminals who were driving behind him for several turns); *United States v. O'Brien,* 734 Fed. Appx. 280, 281 (5th Cir. 2018) (police stopped man who bore sufficient resemblance to description

provided in the "reports of the two callers—one reporting a verbal altercation with a man and another reporting a man following her car in the same area—created reasonable suspicion that the man identified by the callers was wandering about the area potentially seeking to commit a crime"); *Floyd v. City of New York*, 959 F. Supp. 2d 540, 648 (S.D.N.Y. 2013) (finding that police had reasonable suspicion to stop man for suspected harassment based on woman's report that someone was following her and asking her repeatedly for money).

Accordingly, it was not clearly established that Defendant Stebbins would violate Plaintiff's Fourth Amendment rights by calling the Enfield Police under the circumstances and remaining at the scene during Enfield's investigation. *See Garofolo v. Sheehan,* 2021 U.S. Dist. LEXIS 143648, at *18 (D. Conn. 2021) (finding it was objectively reasonable for defendants to rely on the asset forfeiture bureau to assess the case and undertake the forfeiture and for defendants to believe they didn't violate constitutional rights for making the request to pursue the forfeiture).

**B. It was Not Clearly Established that Any of Defendant Stebbins' Actions Would Constitute Excessive Force Within the Meaning of the Fourth, Fifth or Eighth Amendment.**

Count Two asserts excessive force pursuant to the Fourth, Fifth, Eighth, and Fourteenth Amendments. *Compl.,*¶ 74.[2] The Fifth Amendment does not apply to Defendant Stebbins because he is not a federal employee. *Baltas v. Maiga*, 2021 U.S. Dist. LEXIS 102419, *6 (D. Conn. 2021) (Shea, J.) ("Generally, the Fifth Amendment Due Process Clause applies to the federal government, not to the states*")*; *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("[t]he Due

---

[2] It appears that Plaintiff cites the Fourteenth Amendment because "[t]he strictures of the Fourth Amendment [are] applied to the States through the Fourteenth Amendment. *O'Connor v. Ortega*, 480 U.S. 709, 714 (1987). S*ee also Wilson v. City of Hartford*, 1998 U.S. Dist. LEXIS 21570, *24 (D. Conn. 2018) (Thompson, J.) (explaining that plaintiff's referenced the Fourteenth Amendment in conjunction with the Fourth Amendment because the Fourteenth Amendment incorporated the Fourth Amendment to the State).

Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law"). The Eighth Amendment does not apply because there are no post-conviction allegations. S*ee Wilson v. City of Hartford*, 1998 U.S. Dist. LEXIS 21570, *23 (D. Conn.1998) (Thompson, J.) ("The defendants correctly point out, however, that the plaintiff is not entitled to civil relief pursuant to the Eighth Amendment because his injuries were not caused in a post-conviction context").[3]

Plaintiff's claims that Defendant Stebbins engaged in excessive force when he allegedly filed police reports against him, ran his license plate, drove behind him, told Plaintiff's employer that he did not live in Massachusetts, and Googled him.[4] *Ex. Q: Plaintiff's Answers to Interrogatories, pg.* 2-6. It is undisputed that Defendant Stebbins never made physical contact with Plaintiff—he never even touched him. *56(a)(1),* ¶ 87. It is undisputed that Defendant Stebbins never caused Plaintiff a physical injury. *56(a)(1),* ¶ 88. Connecticut courts have granted summary judgment on excessive force claims where there was no evidence of physical contact. *See Sweet v. City of Hartford*, 2018 U.S. Dist. LEXIS 87221, *11 (D. Conn. May 24, 2018) (Haight, J.) (granting summary judgment on excessive force claim "because he had no physical contact with Plaintiff. The undisputed evidence establishes that [Defendant] did not subject Plaintiff to force, let alone force that can be deemed excessive."); *LeBron v. Thibodeau*, 2023 U.S. Dist. LEXIS 70647, *13-14 (D. Conn. 2023) (Williams, J.) (explaining that "passive observation

---

[3] The reference to the Eighth Amendment may be a typo, because paragraph 15 of the Complaint states, "Plaintiff's action for violations guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution is brought pursuant to the provisions of 42 U.S.C. § 1983," without mentioning the Eighth Amendment. *Compl.,* ¶ 15.

[4] Any issues of fact regarding these alleged events are not material to this motion because Plaintiff's version of the facts does not establish an excessive force claim.

of an inmate's beating . . . cannot serve as a basis for a plaintiff to bring an *excessive force* claim" under the Fourteenth Amendment).

At the very least, Defendant Stebbins is entitled to qualified immunity because the US. Supreme Court and the Second Circuit have not recognized an excessive force claim without physical contact. *See Gerard v. City of New York,* 843 Fed. Appx. 380, 382 (2d. Cir. 2021) (Summary Order). Instead, "the distinctly prevailing view . . . is that threats of force, including the drawing of a firearm, do not constitute excessive force." *Cerisier v. City of New York,* 2022 U.S. Dist. LEXIS 154604, at * (E.D.N.Y. July 20, 2022). The Fourth Amendment "does not require police encounters to be pleasant, and it does not require police officers to be polite." *Harwe v. Floyd,* 2011 U.S. Dist. LEXIS 25987, at *2 (D. Conn. 2011) (Kravitz, J.). Defendant Stebbins' "state of mind, whether evil or benign, is not relevant." *Brown v. City of New York,* 798 F.3d 94, 100-01 (2d. Cir. 2015).

Indeed, "mere intimidation, without more is not sufficient to state a claim of excessive force under the Fourth Amendment." *Jackson v. Wylie*, 2017 U.S. Dist. LEXIS 145166, at * (N.D.N.Y. 2017) *report and recommendation adopted*, 2017 WL 4326519 (recommending dismissal of excessive force claim where defendants allegedly intimidated plaintiff by keeping their hands on the butts of their weapons whole plaintiff was undergoing strip searches). S*ee also Hester v. Albany Cnty. Dist. Atty,* 2021 U.S. Dist. LEXIS 94216, at * (N.D.N.Y. April 22, 2021), *report and recommendation adopted,* 2021 U.S. Dist. LEXIS 93107 (N.D.N.Y. May 17, 2021) (holding that plaintiff did not plausibly state a claim for excessive force where plaintiff merely alleged threats and intimidation).

Similarly, verbal abuse and threatening language are not a constitutional violation. *Pelt v. City of New York*, 2013 U.S. Dist. LEXIS 122848, *48 (E.D.N.Y. 2013) ("mere verbal abuse is

not a § 1983 violation, insofar as the [m]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations"); *Ramirez v. Holmes,* 921 F. Supp. 204, at *14 (S.D.N.Y. 1996) ("[a]llegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983"); *Sentementes v. Town of Bethel,* 2021 U.S. Dist. LEXIS 211, at *n.7 (D. Conn. 2021) (Shea, J.) (Initial Review Order of Amended Complaint) (explaining that allegations of "police harassment and intimidation . . do not suggest a plausible Fourth Amendment claim based on excessive force"); *Smith v. City of New York*, 2015 U.S. Dist. LEXIS 81337, *9 (S.D.N.Y. 2015) ("in this Circuit, neither mere verbal abuse nor mere threats of force support an excessive force claim").

Even if there was uncertainty, "the very uncertainty surrounding this question . . . entitles the defendant to qualified immunity." *Sherman v. Platosh*, 2017 U.S. Dist. LEXIS 35089, *9 (D. Conn. March 13, 2017) (Shea, J.). The Court should grant Defendant's Stebbins' motion for summary judgment on Plaintiff's excessive force claims on the basis of qualified immunity. *See, e.g., Cerisier,* 2022 U.S. Dist. LEXIS 154604, at *13 (granting summary judgment on § 1983 excessive force claim).

**V. The Court Should Grant Summary Judgment on Count Five because it is Time-Barred.**

The Court should grant summary judgment on Count Five because it is time-barred. Count Five asserts a defamation per se claim against Defendant Stebbins. The Court may properly decide upon a motion for summary judgment that Plaintiff's claim is time-barred. *BellSouth Telecomms. v. W.R. Grace & Co*., 77 F.3d 603, 609 (2d. Cir. 1996). Plaintiff's defamation pe se claim against Defendant Stebbins "is a state law violation claim, not a claim for violation of his constitutional rights." *Britt v. Unknown Officers*, 2019 U.S. Dist. LEXIS 98521, *7-8 (D. Conn. 2019) (Hall, J.). Accordingly, the applicable statute of limitations is Conn. Gen. Stat. § 52-597. *Doe v. Rackliffe,*

337 Conn. 627, 634 at n.9 (noting that § 52-597 is the statute of limitation that governs actions for defamation); *Samuel v. City of Hartford*, 154 Conn. App. 138, 142 (2014) ("the pertinent statute of limitations is contained in § 52-597, which provides that "[n]o action for libel or slander shall be brought but within two years from the date of the act complained of").

The Court should grant summary judgment on Count Five because Plaintiff's claim is barred by the two-year statute of limitations in § 52-597. *See Britt,* 2019 U.S. Dist. LEXIS 98521, at *8 (dismissing defamation claim as untimely). Plaintiff is limited to the defamatory statements that he specifically alleged in the Complaint. *See Gibson v. Metropolis of CT LLC*, 2020 U.S. Dist. LEXIS 33498, *27 (D. Conn. 2020) (Dooley, J.) (dismissing defamation claim as untimely where "the only instances of defamation pled by Plaintiffs with adequate particularity are those set forth in the complaint's exhibits, all of which fall outside of the two-year statute of limitations").

The Connecticut Supreme Court has explained, "[t]o be actionable per se, the [defamation] must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached. . . . The modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment." *Gleason v. Smolinski*, 319 Conn. 394, 430 n.31 (2015). Plaintiff alleges that Defendant Stebbins made the following statements: (1) that Plaintiff was speeding; (2) Plaintiff drove "dangerously," and (3) Plaintiff engaged in stalking. *Compl.*, ¶ 89. Plaintiff alleges that Defendant Stebbins made those statements to: other Connecticut State Police officers, Enfield Police officers, and police dispatchers. *Compl.*, ¶ 90.

The alleged statements all occurred in 2018. *See Compl.* ¶ 25 (alleging that Defendant Stebbins said Plaintiff was "driving over the speed limit" on May 26, 2018); *Compl.* ¶ 56 (application for civil restraining order was filed on November 13, 2018); *Compl.* ¶ 91 (referring to "falsehoods in his application for the restraining order"). Plaintiff's Answers to Interrogatories

were also limited to 2018: it references statements made in connection with the internal affairs investigation, the civil protection order and statements allegedly made before Plaintiff's arrest on December 11, 2018. *56(a)(1),* ¶ 81; *Ex. Q: Plaintiff's Answers to Interrogatories,* pg. 7-8. It is undisputed that the hearings in connection with the civil protection order occurred on November 23, 2018 and December 14, 2018. *56(a)(1),* ¶ 77. It is also undisputed that the Internal Affairs investigation was over by October 11, 2018. *56(a)(1),* ¶ 31.

"The statute of limitations for a defamation claim begins on the date of publication" and "a new cause of action arises with each publication." *Cweklinsky v. Mobil Chem. Co*., 267 Conn. 210, 224 (2004). Plaintiff filed the Complaint on February 9, 2021. All allegedly defamatory statements were made before February 9, 2019. Accordingly, Plaintiff's defamation per se claim in Count Five is barred by the two-year statute of limitations in § 52-597. *See Onofrio v. Savoy*, 2018 U.S. Dist. LEXIS 162448, at *13 (D. Conn. Sept. 24, 2018) (Garfinkel, J.) (granting motion for summary judgment based on § 52-597); *Fraser v. Conn. Dep't of Soc. Servs*., 2010 U.S. Dist. LEXIS 32266, *5 (D. Conn. 2010) (Eginton, J.) (dismissing libel claim *sua sponte* because it was barred by § 52-597).

It should be noted that even if it wasn't time-barred, any statements that Defendant Stebbins made in a quasi-judicial or a judicial proceeding—such as the civil protection application and hearing—are protected from a defamation claim by absolute privilege. *Rioux v. Barry,* 293 Conn. 338, 344 (2007) ("We consistently have held that absolute immunity bars defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings"); *Mayo v. Perez*, 2023 Conn. Super. LEXIS 178, *7 (Conn. Super. 2023) (Knox, J.) ("allegations of counts one through four of the operative complaint alleging the statements and/or conduct of the defendants

made while filing of and testifying on an application for a civil protective order are barred by the absolute litigation privilege").

**CONCLUSION**

For the foregoing reasons, Defendant Stebbins respectfully requests that the Court grant his motion for summary judgment in its entirety.

DEFENDANT STEVEN STEBBINS

WILLIAM TONG
ATTORNEY GENERAL

By: _*/s/ Laura Vitale*_____
Laura E. Vitale
Assistant Attorney General
Office of the Attorney General
165 Capitol Avenue, Suite 5000
Hartford, CT 06106
Tel: (860) 808-5340
Fax.: (860) 808-5383
Federal Bar No. ct29345
Email: Laura.Vitale@ct.gov

**CERTIFICATION**

I hereby certify that on July 3, 2023, a copy of the foregoing was filed electronically. Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Laura Vitale*_________
Laura E. Vitale (#ct29345)
Assistant Attorney General