**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

**MARCUS CAMERON,**

**Plaintiff**

**v.**

**STEVEN STEBBINS, et al.**

**Defendants**

**NO.: 3:21-cv-00165OAW**

## LOCAL RULE 56(A)2 STATEMENT OF FACTS IN OPPOSITION TO SUMMARY JUDGMENT

### DEFENDANT SAMSON'S STATEMENTS AND PLAINTIFF'S RESPONSES

**1.** Between 2015 and June 2019, plaintiff, Marcus Cameron ("Plaintiff"), owned a property at 49 Foxcroft Road, Enfield, CT. Exhibit A, Marcus Cameron's Deposition Excerpts, August 23, 2022, Pg. 27, 20 – 21; Exh. B, Marcus Cameron's Deposition Excerpts, March 16, 2023, Pg. 166, ¶¶11–13.

**Plaintiff's Response:** Undisputed for purposes of this motion.

2. At time of the incidents alleged by the Plaintiff, defendant, Steven Stebbins ("Stebbins"), was a State Police Trooper with the Connecticut State Police. Exh. C, Steven Stebbins's Deposition Excerpts, Pg. 13, ¶9–11, Pg. 15, ¶4–6.

**Plaintiff's Response:** Undisputed for purposes of this motion.

3. On May 22, 2018, Stebbins owned a property at 44 Foxcroft Road. Exh. F, Internal Affairs Report, Pg. 28.

**Plaintiff's Response:** Undisputed for purposes of this motion.

4. At time of the incidents alleged by the Plaintiff, defendant, Stephen Samson ("Samson), was a State Police Trooper with the Connecticut State Police. Exh. D, Stephen Samson's Deposition Excerpts, Pg. 101, ¶¶15–21.

**Plaintiff's Response:** Undisputed for purposes of this motion.

5. At all relevant times defendant, Brian Nolan ("Nolan"), was a police officer with the Enfield Police Department. Exh. E, Brian Nolan's Deposition Excerpts, Pg. 15, ¶¶18–24.

**Plaintiff's Response:** Undisputed for purposes of this motion.

6. On May 22, 2018, Stebbins, reported observing the Plaintiff commit two traffic violations in the town of Enfield in the area of Route 5. Exh. C, Pg. 32, ¶¶1–3, 14–18.

**Plaintiff's Response:** Undisputed for purposes of this motion.

7. After observing the Plaintiff, Stebbins followed the Plaintiff to the Plaintiff's house and approached the Plaintiff in the Plaintiff's driveway. Exh. C, Pg. 32, ¶¶22–24; Pgs. 37–38, ¶¶23–24, 1–7.

**Plaintiff's Response:** Undisputed for purposes of this motion.

8. Stebbins did not follow the traffic stop procedures on this occasion. Exh. C, Pg. 36, ¶¶19–22.

**Plaintiff's Response:** Undisputed for purposes of this motion.

9. Following the interaction between Plaintiff and Stebbins, the Plaintiff filed an internal affairs complaint with the Connecticut State Police. Exh. B, Pg. 90, ¶¶15–17.

**Plaintiff's Response:** Undisputed for purposes of this motion.

10. The Plaintiff's complaint was assigned to Samson for investigation. Exh. D, Pgs. 21–22, ¶¶22–24, 1.

**Plaintiff's Response:** Undisputed for purposes of this motion.

11. Defendant Samson met with the Plaintiff on June 25, 2018, to discuss his complaint. Exh. D, Pg. 112, ¶ ¶15–20.

**Plaintiff's Response:** Undisputed for purposes of this motion.

12. Following his investigation, Samson "noted inconsistencies in the reporting of the incident by [the Plaintiff]." Exh. F, Pg. 9.

**Plaintiff's Response:** Undisputed for purposes of this motion.

13. On October 11, 2018, Lieutenant Daniel Loughman issued a final report. The report concluded that Stebbins had the authority to conduct a traffic stop on May 22, 2018 but violated State Police procedures by failing to "call-in" the motor vehicle stop to Troop H, failing to activate the MVR in his cruiser, and failing to identify himself when asked by Plaintiff Cameron. Exh. F, Pgs. 1–2.

**Plaintiff's Response:** Undisputed for purposes of this motion.

14. On October 11, 2018, a letter was sent from Lt. Loughman to the Plaintiff indicating that the investigation had been completed. The letter indicated that Stebbins had the authority to conduct a traffic stop, but that Stebbins should have identified himself. The letter further indicated that the claim that Stebbins had threatened the Plaintiff could not be substantiated. Exh. F, Pg. 3; Exh. G, Arrest Warrant, ¶17.

**Plaintiff's Response:** Undisputed for purposes of this motion.

15. On November 12, 2018, Plaintiff observed Stebbins drive past 49 Foxcroft Road, and thereafter entered his car and began driving in the same general direction as Stebbins. Exh. A, Pg. 137, ¶¶16–21; Pg. 139, ¶ ¶7–9.

**Plaintiff's Response:** Undisputed for purposes of this motion.

16. After leaving 49 Foxcroft Road on November 12, 2018, the Plaintiff was driving behind Stebbins on Dover Road. Exh. A, Pg. 140, ¶¶8–14.

**Plaintiff's Response:** Undisputed for purposes of this motion.

17. On November 12, 2018, after the Plaintiff left 49 Foxcroft Road, and after traveling behind Stebbins on Dover Road, the Plaintiff continued behind Stebbins north on Enfield Street, and right onto Route 5. Exh. A, Pg. 142, ¶6–11.

**Plaintiff's Response:** Undisputed for purposes of this motion.

18. After traveling on Route 5 as noted above, Plaintiff saw Stebbins parked on the "dirt patch" along the I-91 South entrance ramp. Exh. A, Pg. 144, ¶¶8–12; Exh. C, Pg. 125, ¶¶16–22.

**Plaintiff's Response:** Undisputed for purposes of this motion.

19. Stebbins, while parked as indicated above, and believing that he was being followed by the Plaintiff, contacted his supervisor Samson. Samson advised Stebbins to contact Enfield PD. Exh. C, Pg.128, ¶¶5–8; Exh D, Pg. 170, ¶¶10–15; Exh E, Pgs. 27–28, ¶¶20–24, 1.

**Plaintiff's Response:** Undisputed for purposes of this motion.

20. After merging onto I-91 as noted above, the Plaintiff pulled over to the side of the highway. Exh. A, Pg. 144, ¶¶23–24.

**Plaintiff's Response:** Undisputed for purposes of this motion.

21. The Plaintiff observed Stebbins drive past him on I-91 and exit the highway in front of him. Exh. A, Pgs. 146–147, ¶¶24, 1–2, 12–13.

**Plaintiff's Response:** Undisputed for purposes of this motion.

22. After being contacted by Stebbins, Samson contacted his supervisor, Lt. Pendleton, who directed Samson to respond to the scene with Stebbins. Exh D, Pgs. 169–170, ¶¶19 – 24, 1–5.

**Plaintiff's Response:** Undisputed for purposes of this motion.

23. After exiting the highway, both Plaintiff and Stebbins parked in the Brookside Plaza where they remained until the arrival of the Enfield Police Department. Exh. C, Pgs. 135–136, ¶¶7–10, 24, 1 – 3; Exh. A, Pgs. 147 – 148, ¶¶22–24, 1–4.

**Plaintiff's Response:** Undisputed for purposes of this motion.

24. The plaintiff initially spoke with Officer Croteau of Enfield PD. Exh. B, Pg. 290, ¶¶16–20.

**Plaintiff's Response:** Undisputed for purposes of this motion.

25. While speaking with Officer Croteau, as noted above, the Plaintiff declined to provide identification or his address and requested a supervisor. Exh. B, Pg. 291, ¶¶7–14; Exh. G, ¶10.

**Plaintiffs' Response:** Disputed. The evidence cited does not support the statement of fact. Ex. B, Pg. 291:7–14 refers to Plaintiff's detainment after he had already received his license back from Officer Croteau.

26. On November 12, 2018, Nolan was dispatched to take over the scene in response to the call from Stebbins, due to the Enfield Police Department's policy for incidents involving active-duty police officers. Exh E, Pgs. 24–25, ¶¶24, 1–20.

**Plaintiff's Response:** Undisputed for purposes of this motion.

27. When Nolan arrived, Enfield PD officers Croteau, and Chagnon were on scene in addition to defendants Samson and Stebbins. Exh. G, ¶3.

**Plaintiff's Response:** Undisputed for purposes of this motion.

28. Plaintiff was not placed under arrest on November 12, 2018, in part because Nolan believed that the involvement of a police officer necessitated further investigation. Exh B, Pg. 249, ¶¶5–7; Exh E, Pgs. 48–49, ¶¶22–24, 1–3.

**Plaintiff's Response:** Undisputed for purposes of this motion.

29. During his interaction with the Enfield PD on November 11, 2018, the Plaintiff told officers he lived in Massachusetts, but provided an address on Foxcroft Road in Enfield. Exh. G, ¶10.

**Plaintiff's Response:** Undisputed for purposes of this motion.

30. Defendant Samson did not speak with Plaintiff on November 12, 2018. Exh B. Pg. 248, ¶¶8–10.

**Plaintiff's Response:** Undisputed for purposes of this motion.

31. Nolan investigated Stebbins complaint and believing that he had sufficient probable cause for the charge of Stalking in the Third Degree in violation of Conn. Gen. Stat. § 53a-181e, submitted an arrest warrant affidavit on December 5, 2018. Exh E, Pg. 86, ¶¶9–15; see generally, Exh. G.

**Plaintiff's Response:** Undisputed for purposes of this motion.

32. On December 6, 2018, the arrest warrant was signed by Assistant State's Attorney Parakilas, and on December 10, 2018, the warrant was approved and signed by the Honorable Sheila Prats. Exh. G

**Plaintiff's Response:** Undisputed for purposes of this motion.

33. On December 11, 2018, the Plaintiff was placed under arrest by Enfield Police Officer Caires. Exh. G, Pg. 2; Exh E, Pg. 178, ¶¶14–15.

**Plaintiff's Response:** Undisputed for purposes of this motion.

34. Plaintiff was never placed under arrest by Samson, nor did Samson ever use physical force against the Plaintiff. Exh. B, Pg. 247, ¶¶20–22, Pg. 249, 8–10.

**Plaintiff's Response:** Undisputed for purposes of this motion.

35. On February 7, 2019, the Plaintiff applied for, and was granted the Accelerated Rehabilitation program for a period of 30 days. Exh H, State v. Marcus Cameron Transcript, dated February 7, 2019, Pgs. 7–8, ¶¶16–27, 1–5.

**Plaintiff's Response:** Undisputed for purposes of this motion.

36. On March 7, 2019, following a successful completion of the Accelerated Rehabilitation program, the stalking charge was dismissed. Exh I, State v. Marcus Cameron Transcript, dated March 7, 2019 Pg. 2, ¶19).

**Plaintiff's Response:** Undisputed for purposes of this motion.

**DEFENDANT STEBBINS' STATEMENTS AND PLAINTIFF'S RESPONSES**

1. Defendant Stebbins is a Connecticut State Trooper, Trooper First Class. *Exhibit A: Deposition of Steven Stebbins,* ("*Ex. A: Stebbins Dep.*") p. 5:21-24.

**Plaintiff's Response:** Undisputed for purposes of this motion.

2. In May 2018, Defendant Stebbins resided at 44 Foxcroft Road in Enfield, Connecticut, Exhibit *B: Deposition of Marcus Cameron dated August 23, 2022,* ("*Ex. B. Cameron Dep. 8-23-22*") p. 93:10-13, and Defendant Stebbins lived there until he purchased another home on October 9, 2018. *Ex. A: Stebbins Dep.,* pp. 123:21-24; 154:23-155:2.

**Plaintiff's Response:** Undisputed for purposes of this motion.

3. Plaintiff owned a house at 49 Foxcroft Road in Enfield, Connecticut from 2015 to June 2019. *Ex. B: Cameron Dep. 8-23-22,* p. 27:20-21; *Exhibit C: Deposition of Marcus Cameron dated March 16, 2023,* ("*Ex. C: Cameron Dep. 3-16*-23") pp. 166:11-13.

**Plaintiff's Response:** Undisputed for purposes of this motion.

4. Plaintiff's home at 49 Foxcroft Road was close enough to Defendant Stebbins' residence at 44 Foxcroft Road that Plaintiff could see Defendant Stebbins'

residence when he stood outside of his house. *Ex. B: Cameron Dep. 8-23-22,* p. 93:10-13.

**Plaintiff's Response:** Undisputed for purposes of this motion.

5. On May 22, 2018, Plaintiff and Defendant Stebbins were both driving on Route 5 in Enfield, Connecticut. *Ex. B: Cameron Dep. 8-23-22,* p. 68:20-25. Defendant Stebbins was driving his Connecticut State Police cruiser. *Ex. A: Stebbins Dep.,* pp. 31-33; *Ex. B: Cameron Dep. 8-23-22,* pp. 62:14-63:11.

**Plaintiff's Response:** Undisputed for purposes of this motion.

6. Plaintiff passed Defendant Stebbins on the right. *Ex. B: Cameron Dep. 8-23-22,* p. 63:2-16.

**Plaintiff's Response:** Undisputed for purposes of this motion.

7. Plaintiff was driving a Honda Accord that was registered to his home on 49 Foxcroft Road, Enfield, Connecticut. *Ex. B: Cameron Dep. 8-23-22,* pp. 60:14-61:4, 69:1-2.

**Plaintiff's Response:** Undisputed for purposes of this motion.

8. After Plaintiff drove by Defendant Stebbins, Plaintiff continued on to his home at 49 Foxcroft Road. *Ex. B: Cameron Dep. 8-23-22,* p. 63:2-3. The route that Plaintiff took had two stop signs. *Ex. B: Cameron Dep. 8-23-22,* pp. 67-68.

**Plaintiff's Response:** Undisputed for purposes of this motion.

9. Defendant Stebbins drove his police cruiser to Plaintiff's house immediately after he observed Plaintiff's driving. *Ex. A: Stebbins Dep.,* pp. 32-33.

**Plaintiff's Response:** Undisputed for purposes of this motion.

10. Defendant Stebbins parked his police cruiser and walked in Plaintiff's driveway. *Ex. A: Stebbins Dep.,* pp. 36-37; *Ex. B: Cameron Dep. 8-23-22,* pp. 19-22.

**Plaintiffs' Response:** Disputed. A portion of the evidence cited (*Ex. B: Cameron Dep. 8-23-22,* pp. 19-22) does not support the alleged statement of fact, as it does not relate to the parking of the Defendant in the driveway. (*Ex. B: Cameron Dep. 8-23-22,* pp. 40:3-5, 45:12-15, 72:3-11).

11. Stebbins was wearing plain clothes and had his service pistol on his hip. *Ex. B: Cameron Dep. 8-23-22,* p. 64:16-18; *Ex. A: Stebbins Dep.,* p. 37:8-11.

**Plaintiff's Response:** Undisputed for purposes of this motion.

12. Defendant Stebbins told Plaintiff that Plaintiff was speeding and that he saw Plaintiff run two stop signs. *Ex. B: Cameron Dep. 8-23-22,* p. 69:20-23.

**Plaintiff's Response:** Disputed. The record reflects the mention of only one stop sign. (*Ex. B: Cameron Dep. 8-23-22,* p. 69:20-23).

13. Plaintiff told Defendant Stebbins that he saw Defendant Stebbins driving on the phone. *Ex. B: Cameron Dep. 8-23-22,* p. 69:24-25.

**Plaintiff's Response:** Undisputed for purposes of this motion.

14. Defendant Stebbins told Plaintiff that he was only there to talk to him man to man. *Ex. B*: *Cameron Dep. 8-23-22,* p. 70:9-16. Defendant Stebbins told Plaintiff that he was not there to issue him a ticket or to arrest him. *Ex. B: Cameron Dep., p. 8-23-22*, p. 70:4-10.

**Plaintiff's Response:** Undisputed for purposes of this motion.

15. Plaintiff told Defendant Stebbins to leave his property. *Ex. B: Cameron Dep., 8-23-22,* p. 71:9-13. Defendant Stebbins left when Plaintiff told him to leave. *Ex. B: Cameron Dep., 8-23-22*, p. 71:22-23.

**Plaintiff's Response:** Undisputed for purposes of this motion.

16. Plaintiff claims that as Defendant Stebbins was walking back down the driveway toward his car, Defendant Stebbins said, "I'll be back" and "I'm going to take care of you" while he walked back down the driveway toward his vehicle. *Ex. B: Cameron Dep., 8-23-22*, p. 73:2-8; *Ex. C: Cameron Dep. 3-16-23,* pp. 130:25-132:6, 135:19-23; *Exhibit D: Deposition of Marcus Cameron, Exhibit 5: E-mail dated May 25, 2018* ("*Ex. D: Cameron Dep. Ex. 5*").

**Plaintiff's Response:** Disputed. The record reflects that Defendant Stebbins was not walking down the driveway at the time of this interaction (*Ex. B:* p. 71:14-18).

17. Plaintiff then asked Defendant Stebbins for his name and Defendant Stebbins got into his vehicle and drove off without identifying himself. *Ex. D: Cameron Dep. Ex. 5.*

**Plaintiff's Response:** Undisputed for purposes of this motion.

18. Defendant Stebbins did not activate the lights on his cruiser. *Ex. D: Cameron Dep. Ex. 5.*

**Plaintiff's Response:** Undisputed for purposes of this motion.

19. Later the same day, Plaintiff called 9-1-1 about Defendant Stebbins. *Ex. B: Cameron Dep. 8-23-22,* pp. 72:24-73:3.

**Plaintiff's Response:** Undisputed for purposes of this motion.

20. Plaintiff also filed an Internal Affairs Complaint against Defendant Stebbins with the Connecticut State Police. *Exhibit E: Deposition of Marcus Cameron, Exhibit 45* ("*Ex. E: Cameron Dep. Ex. 45*")*; Ex. C: Cameron Dep. 3-16-23,* pp. 132:15-133:9, 133:6-9, 135:19-23.

**Plaintiff's Response:** Undisputed for purposes of this motion.

21. The investigation into Plaintiff's Internal Affairs complaint against Defendant Stebbins was assigned to Defendant Stephen Samson. *Exhibit F: Deposition of Stephen Samson,* ("*Ex. F: Samson Dep.*") pp. 21:22-22:1.

**Plaintiff's Response:** Undisputed for purposes of this motion.

22. Plaintiff admits that on May 26, 2018 he drove by Defendant Stebbins' residence twice with his friend Danielle in the car. *Ex. B: Cameron Dep. 8-23-22,* pp. 78:19-25, 86:4-12.

**Plaintiff's Response:** Disputed. Plaintiff admits to driving past Stebbins' residence, however the complete evidence reflects the necessity to go by Defendant Stebbins' residence twice due to construction on Montano Road (*Ex. B,* pp. 79: 18-25).

23. Plaintiff went to the Enfield Police on May 26, 2018 about Defendant Stebbins. *Ex. B: Cameron Dep. 8-23-22,* p. 87:3-12.

**Plaintiff's Response:** Undisputed for purposes of this motion.

24. Plaintiff admits that on May 30, 2018, he drove by Defendant Stebbins' residence twice in the span of a couple minutes. *Ex. B: Cameron Dep. 8-23-22,* pp. 103:3-5, 106:11-14.

**Plaintiff's Response:** Undisputed for purposes of this motion.

25. On May 30, 2018, Plaintiff recorded a video while he was driving down Foxcroft Road toward Defendant Stebbins' residence. *Ex. C: Cameron Dep. 3-16-23,* pp. 38:20-39:15; 39:25-40:17, 51:16-52:14; 56:4-8; 57:18-58-15; *Exhibit*

*G*: Part 1 of May 30, 2018 Video (bates-numbered Stebbins_000003)*; Exhibit H*: Part 2 of May 30, 2018 Video (bates-numbered Stebbins_000004); *Exhibit I*: Part 3 of May 30, 2018 Video (bates-numbered Stebbins_000005); *Exhibit J*: Part 4 of May 30, 2018 Video (bates-numbered Cameron_000087).

**Plaintiff's Response:** Undisputed for purposes of this motion.

26. Plaintiff admits that on May 30, 2018 he stopped his car outside of Defendant Stebbins' residence at 44 Foxcroft Road while recording the video. *Ex. C: Cameron Dep. 3-16-23,* p. 55. A man was in the street man outside of Defendant Stebbins' house, and Defendant Stebbins was in his driveway next to his vehicle. *Ex. H: May 30, 2018 Video; Ex. C: Cameron Dep. 3-16-23,* p. 59:1-11.

**Plaintiff's Response:** Undisputed for purposes of this motion.

27. When Plaintiff stopped his car in front of Defendant Stebbins' house, Defendant Stebbins stayed in his driveway next to his vehicle and did not speak to Plaintiff. *Ex. J: May 30, 2018 Video*; *Ex. C: Cameron Dep. 3-16-23,* p. 59:1-11.

**Plaintiff's Response:** Undisputed for purposes of this motion.

28. Plaintiff went to the Enfield Police Department on May 30, 2018 because he wanted the Enfield Police "to ask about filing certain criminal charges" against the other man for "obstructing traffic." *Ex B: Cameron Dep. 8-23-22,* p. 108:8-109:9.

**Plaintiff's Response:** Disputed. The way this statement is written does not reflect the transcript. Plaintiff went to the Enfield police because he "wanted the police to assist in identifying them", and he also went there to "ask them about filing criminal charges against the gentleman" (*Ex. B,* p. 108:23-109:5).

29. On July 8, 2018, a woman showed up at Defendant Stebbins' house. *Ex. A: Stebbins Dep.,* p. 89; *Ex B: Cameron Dep. 8-23-22,* p. 117. The woman walked up Defendant Stebbins' driveway and took pictures of his police cruiser, his personal vehicles, and his house. *Ex. A: Stebbins Dep.,* p. 89. She appeared to try to open the door of Defendant Stebbins' police cruiser. *Ex. A: Stebbins Dep.,* p. 89.

**Plaintiff's Response:** Undisputed for purposes of this motion.

30. Defendant Stebbins thought the woman might be someone that Plaintiff knew. *Ex. A: Stebbins Dep.,* pp. 88-91.

**Plaintiff's Response:** Undisputed for purposes of this motion.

31. By October 11, 2018, the investigation into Plaintiff's Internal Affairs complaint against Defendant Stebbins was completed. *Ex. C: Cameron Dep. 3-16-23,* pp. 280:23-281:13. On October 11, 2018, the Connecticut State Police mailed a letter addressed to Plaintiff to notify him of the result of the Internal Affairs investigation against Defendant Stebbins. *Exhibit K: E-mails from December 2018 (bates-numbered p. Cameron000911-912)***.**

**Plaintiff's Response:** Undisputed for purposes of this motion.

32. Plaintiff agrees that by November 12, 2018 that there was a "long history" between Defendant Stebbins and Plaintiff. *Exhibit M: Croteau cell phone video (bates-numbered Cameron000011) ("Ex. M: Croteau cell phone video")* at 1:55 to 2:00.

**Plaintiff's Response:** Undisputed for purposes of this motion.

33. On November 12, 2018, Defendant Stebbins went to 44 Foxcroft Road to check on the heating system. *Ex. A: Stebbins Dep.,* p. 116:2-12.

**Plaintiff's Response:** Undisputed for purposes of this motion.

34. On November 12, 2018, Plaintiff arrived at his home at 49 Foxcroft Road at 2:28 p.m. *Ex. C: Cameron Dep. 3-16-23,* p. 73:12-15.

**Plaintiff's Response:** Undisputed for purposes of this motion.

35. Defendant Stebbins left 44 Foxcroft Road and drove passed Plaintiff's house at 2:29 p.m. *Ex. C: Cameron Dep. 3-16-23*, p. 77:6-13.

**Plaintiff's Response:** Undisputed for purposes of this motion.

36. Defendant Stebbins was driving his police cruiser. *Ex. B: Cameron Dep. 8-23-22,* p. 137:16-21.

**Plaintiff's Response:** Undisputed for purposes of this motion.

37. Plaintiff was near his mailbox when he saw Defendant Stebbins drive by his house. *Ex. B: Cameron Dep. 8-23-22,* p. 138:21-25. Plaintiff then got into his own car and started driving. *Ex. B: Cameron Dep. 8-23-22,* p. 139:7-9.

**Plaintiff's Response:** Undisputed for purposes of this motion.

38. Defendant Stebbins saw, through his rearview mirror, Plaintiff get into his car and start driving. *Ex. A: Stebbins Dep.,* p. 116:4-12.

**Plaintiff's Response:** Disputed. According to the transcript, Defendant Stebbins

saw Plaintiff "hop in" his car; he did not see Plaintiff start driving (*Ex. A: Stebbins Dep.,* p. 116:4-12).

39. Plaintiff saw Defendant Stebbins continue to drive northbound on Foxcroft Road toward Leonard Road or Freemont Road. *Ex. B. Cameron Dep. 8-23-22,* p. 139: 10-13.

**Plaintiff's Response:** Undisputed for purposes of this motion.

40. Plaintiff went down Eleanor Road and turned right onto Dover Road. *Ex. B: Cameron Dep. 8-23-22,* p. 139:14-19.

**Plaintiff's Response:** Undisputed for purposes of this motion.

41. Plaintiff was behind Defendant Stebbins' car on Dover Road. *Ex. B: Cameron Dep. 8-23-22,* p. 140:8-17.

**Plaintiff's Response:** Undisputed for purposes of this motion.

42. Defendant Stebbins came to the stop sign at the intersection of Dover Road and Colony Road. *Ex. B: Cameron Dep. 8-23-22,* p. 140:13-23. Defendant Stebbins turned left onto Colony Road before Plaintiff. *Ex. B: Cameron Dep.*

*8-23-22,* p. 141:5-7. Plaintiff then turned left onto Colony Road. *Ex. B: Cameron Dep. 8-23-22,* p. 140:19-23.

**Plaintiff's Response:** Undisputed for purposes of this motion.

43. Defendant Stebbins pulled over on the side of Colony Road. *Ex. B: Cameron Dep. 8-23-22,* pp. 141:8-10. Plaintiff went around Defendant Stebbins and pulled over in front of Defendant Stebbins's police cruiser. *Ex. B. Cameron Dep. 8-23-22,* pp. 141:22-142:2.

**Plaintiff's Response:** Undisputed for purposes of this motion.

44. Defendant Stebbins went around Plaintiff and Defendant Stebbins turned right onto Route 5. *Ex. B: Cameron Dep. 8-23-22,* p. 142:3-5.

**Plaintiff's Response:** Undisputed for purposes of this motion.

45. Plaintiff then turned right onto Route 5. *Ex. B: Cameron Dep. 8-23-22,* p. 142:6-11.

**Plaintiff's Response:** Undisputed for purposes of this motion.

46. Defendant Stebbins turned right into a parking lot and Plaintiff "could see him loop the parking lot as if he was coming back out." *Ex. B: Cameron Dep. 8-23-22,* p. 142:12-17.

**Plaintiff's Response:** Undisputed for purposes of this motion.

47. Plaintiff drove past that parking lot and turned left into a different parking lot. *Ex. B: Cameron Dep. 8-23-22,* p. 142:13-19.

**Plaintiff's Response:** Undisputed for purposes of this motion.

48. Defendant Stebbins then turned right out of the parking lot onto Route 5 and continued driving on Route 5. *Ex. A: Stebbins Dep.,* p. 125:11-20.

**Plaintiff's Response:** Undisputed for purposes of this motion.

49. Defendant Stebbins observed Plaintiff's car sitting in a parking lot. *Ex. A: Stebbins Dep.,* p. 125:11-20. Defendant Stebbins thought Plaintiff might be waiting for him. *Ex. A: Stebbins Dep.,* pp. 125-126:1.

**Plaintiff's Response:** Undisputed for purposes of this motion.

50. Defendant Stebbins kept driving. *Ex. A: Stebbins Dep.,* p. 127. Defendant Stebbins entered the entrance ramp to I-91 and pulled over onto the dirt shoulder of the ramp. *Ex. A: Stebbins Dep.,* p. 127:13-15.

**Plaintiff's Response:** Undisputed for purposes of this motion.

51. Plaintiff turned left out of the parking lot and continued onto Route 5. *Ex. B: Cameron Dep. 8-23-22,* p. 144:6-7.

**Plaintiff's Response:** Undisputed for purposes of this motion.

52. When Plaintiff got to the light at the entrance to I-91, he saw that Defendant Stebbins was parked on the dirt shoulder of the entrance ramp to I-91. *Ex. B: Cameron Dep. 8-23-22,* p. 144:8-12.

**Plaintiff's Response:** Undisputed for purposes of this motion.

53. Plaintiff then entered the entrance ramp to I-91. *Ex. B: Cameron Dep. 8-23-22,* p. 144:9-12.

**Plaintiff's Response:** Undisputed for purposes of this motion.

54. Plaintiff drove by Defendant Stebbins while Defendant Stebbins was parked on the dirt shoulder. *Ex. A: Stebbins Dep.,* p. 131:9-13.

**Plaintiff's Response:** Undisputed for purposes of this motion.

55. Plaintiff entered I-91. *Ex. B: Cameron Dep. 8-23-22,* p. 144:11-12. Plaintiff then pulled over onto the right-hand side of I-91. *Ex. A: Stebbins Dep.,* p. 131:18-22; *Ex. B: Cameron Dep. 8-23-22,* p. 144:19-24.

**Plaintiff's Response:** Undisputed for purposes of this motion.

56. Defendant Stebbins entered I-91 and saw Plaintiff pulled over on the side of I-91. *Ex. A: Stebbins Dep.,* p. 131.

**Plaintiff's Response:** Undisputed for purposes of this motion.

57. Plaintiff saw Defendant Stebbins drive by him while he was pulled over on the side of I-91. *Ex. B: Cameron Dep. 8-23-22,* pp. 146:25-147:2. Plaintiff continued driving on I-91 after Defendant Stebbins passed him. *Ex. B: Cameron Dep. 8-23-22,* p. 147:3-8.

**Plaintiff's Response:** Undisputed for purposes of this motion.

58. Defendant Stebbins called Defendant Samson, who was a Sergeant. *Ex. A: Stebbins Dep.,* p. 127. Defendant Samson told Defendant Stebbins to call the Enfield Police Department. *Ex. A: Stebbins Dep.,* p. 130; *Ex. F: Samson Dep.,* pp. 169:15-170:15.

**Plaintiff's Response:** Undisputed for purposes of this motion.

59. Defendant Stebbins called the Enfield Police Department. *Ex. A: Stebbins Dep.,* p. 130, 134.

**Plaintiff's Response:** Undisputed for purposes of this motion.

60. Defendant Stebbins exited the highway first. *Ex. A: Stebbins Dep.,* p. 134. Plaintiff took the same exit directly behind Defendant Stebbins. *Ex. B: Cameron Dep. 8-23-22,* p. 147:12-13; *Ex. A: Stebbins Dep.,* pp. 134-135.

**Plaintiff's Response:** Undisputed for purposes of this motion.

61. Both Defendant Stebbins and Plaintiff ended up in Brookside Plaza in Enfield. *Ex. A: Stebbins Dep.,* pp. 135-136; *Ex. B: Cameron Dep. 8-23-22,* p. 148:3-15.

**Plaintiff's Response:** Undisputed for purposes of this motion.

62. Defendant Stebbins and Plaintiff took essentially the same route to Brookside Plaza. *Ex. C: Cameron Dep. 3-16-23,* p. 146:1-4.

**Plaintiff's Response:** Undisputed for purposes of this motion.

63. Plaintiff claims the "seizure" started with Enfield Police Officer Croteau. *Ex. C: Cameron Dep. 3-16-23,* p. 248:19-21. Enfield Police Officer Croteau arrived at Plaintiff's vehicle in Brookside Plaza at 2:46 p.m. *Ex. B: Cameron Dep. 8-23-22,* pp. 164:24-165:1; *Exhibit L: Croteau cruiser video* (*bates-numbered Cameron0000266 & 195)*[1] at 14:45-14:46.

**Plaintiff's Response:** Undisputed for purposes of this motion.

64. Plaintiff was in his car when Officer Croteau arrived**.** *Ex. L: Croteau cruiser video.*

**Plaintiff's Response:** Undisputed for purposes of this motion.

65. Defendant Stebbins told Officer Croteau which car was Plaintiff's. *Ex. C: Cameron Dep. 3-16-23,* p. 253:2-12; *Exhibit L: Croteau cruiser video* at 14:43-14:44.

**Plaintiff's Response:** Undisputed for purposes of this motion.

[1] Cameron000266 is the application that is used to play the video that is bates-numbered Cameron000195.

66. Defendant Stebbins explained the issue to a female Enfield Police officer at the scene. *Ex. A: Stebbins Dep.,* p. 139:6-13.

**Plaintiff's Response:** Undisputed for purposes of this motion.

67. Officer Croteau spoke with Plaintiff. *Ex. L: Croteau cruiser video; Ex. M: Croteau cell phone video.* Officer Croteau asked Plaintiff questions, and Plaintiff also asked Officer Croteau questions. *Ex. M: Croteau cell phone video.* Plaintiff and Officer Croteau also discussed whether Plaintiff needed to provide Officer Croteau with his name and identification. *Ex. M: Croteau cell phone video.*

**Plaintiff's Response:** Undisputed for purposes of this motion.

68. When Plaintiff asked Officer Croteau if he was under arrest, Officer Croteau told Plaintiff that he was "absolutely not" under arrest. *Ex. C: Cameron Dep. 3-16-23,* p. 294:15-19; *Ex. M: Croteau cell phone video* at 1:31-1:35.

**Plaintiff's Response:** Undisputed for purposes of this motion.

69. Plaintiff told Officer Croteau that he wanted to speak to a supervisor. *Ex. M*: *Croteau cell phone video at 2:17-2:22.* Officer Croteau requested that a supervisor report to the scene. *Ex. M: Croteau cell phone video at 2:44-2:49.*

Defendant Sergeant Nolan went to the scene as the supervisor. *Exhibit N: Deposition of Bryan Nolan ("Ex. N: Nolan Dep."),* p. 25.

**Plaintiff's Response:** Undisputed for purposes of this motion.

70. Defendant Samson also went to the scene. *Ex. A: Stebbins Dep.,* pp. 139-140. Defendant Samson was on scene when Defendant Nolan arrived. *Exhibit O: Affidavit for Application for Arrest Warrant* ("*Ex. O: Arrest Warrant*"), ¶ 3.

**Plaintiff's Response:** Undisputed for purposes of this motion.

71. When Defendant Nolan arrived at the scene, he spoke to one of the officers to get an update on what was happening. *Ex. N: Nolan Dep.,* pp. 27-28. Defendant Nolan also spoke with Plaintiff, Defendant Stebbins and Defendant Samson. *Ex. N: Nolan Dep.,* pp. 28-30.

**Plaintiff's Response:** Undisputed for purposes of this motion.

72. At 3:28 p.m., Plaintiff walked toward the area of Staples. *Ex. L: Croteau cruiser video at 15:28-15:29.*

**Plaintiff's Response:** Undisputed for purposes of this motion.

73. Defendant Stebbins did not speak to Plaintiff at Brookside Plaza. *Ex. B: Cameron Dep. 8-23-22,* p. 150:13-14.

**Plaintiff's Response:** Undisputed for purposes of this motion.

74. Plaintiff was not arrested on November 12, 2018. *Ex. A: Stebbins Dep.,* p. 139:17-18; *Ex. C: Cameron Dep. 3-16-23,* p. 249:5-7.

**Plaintiff's Response:** Undisputed for purposes of this motion.

75. Defendant Stebbins did not know why Plaintiff wasn't charged on November 12, 2018. *Ex. A: Stebbins Dep.,* p. 141. Defendant Stebbins did not know what Enfield Police had for evidence. *Ex. A: Stebbins Dep.,* p. 146.

**Plaintiff's Response:** Undisputed for purposes of this motion.

76. On November 13, 2018, Defendant Stebbins applied for a civil order of protection. *Ex. A: Stebbins Dep.,* pp. 145-147.

**Plaintiff's Response:** Undisputed for purposes of this motion.

77. There was a hearing on the application for civil order of protection on November 23, 2018. *Ex. A: Stebbins Dep.,* p. 150:13-16. The hearing was then continued to December 14, 2018. *Ex. A: Stebbins Dep.,* p. 163:17-19. *Exhibit P: Excerpt from December 14, 2018, Hearing Transcript.*

**Plaintiff's Response:** Undisputed for purposes of this motion.

78. Defendant Nolan decided to further investigate the November 12, 2018 events. *Ex. N: Nolan Dep.,* pp. 48-49.

**Plaintiff's Response:** Undisputed for purposes of this motion.

79. Defendant Nolan believed he had probable cause to charge Plaintiff with a violation of Conn. Gen. Stat. § 53A-181e based on the events of November 12, 2018. *Ex. N: Nolan Dep.,* pp. 38-39.

**Plaintiff's Response:** Undisputed for purposes of this motion.

80. Accordingly, Defendant Nolan signed an arrest warrant affidavit on December 5, 2018. *Exhibit O: Arrest Warrant.* That affidavit was reviewed and signed by Assistant State's Attorney Christopher Parakilas and Superior Court Judge Sheila Prats, who both agreed there was probable cause to arrest Plaintiff. *Ex. O: Arrest Warrant; Ex. N: Nolan Dep.,* p. 86:8-15.

**Plaintiff's Response:** Undisputed as for purposes of this motion, however Plaintiff disagrees with the premise and addresses the issue more thoroughly in his Statement of Additional Facts and Argument.

81. An Enfield Police officer arrested Plaintiff on December 11, 2018. *Ex. C: Cameron Dep. 3-16-23,* pp. 222:22-223:8

**Plaintiff's Response:** Undisputed for purposes of this motion.

82. Defendant Stebbins was not present when Plaintiff was arrested. *Ex. B: Cameron Dep. 8-23-22,* p. 177:9-16.

**Plaintiff's Response:** Undisputed for purposes of this motion.

83. Plaintiff went to the Enfield Police Department after he was arrested. Plaintiff was released to go home from there. *Ex. B: Cameron Dep. 8-23-22,* pp. 178:8-11; 179:2-10.

**Plaintiff's Response:** Undisputed for purposes of this motion, however Plaintiff addresses the totality of his being detained at the Enfield PD in his Additional Statement of Facts and Argument.

84. Any press releases regarding Plaintiff's arrest were created by Enfield Police. *Ex. F: Samson Dep.,* pp. 194:17-195:21.

**Plaintiff's Response:** Undisputed for purposes of this motion.

85. Plaintiff chose to do Accelerated Rehabilitation, and the charges were dismissed after Plaintiff completed that program. *Ex. B: Cameron Dep. 8-23-22,* pp. 183:8-15, 185:3-186:10.

**Plaintiff's Response:** Undisputed for purposes of this motion.

86. At no point during did Defendant Stebbins remove his firearm from the holster. *Ex. C: Cameron Dep. 3-16-22,* p. 149:6-8. At no point did Defendant Stebbins point his firearm at Plaintiff. *Ex. C: Cameron Dep. 3-16-22,* p. 149:3-5.

**Plaintiff's Response:** Disputed. There is no implication to the time frame in which Defendant Stebbins did not remove his firearm.

87. At no point did Defendant Stebbins physically touch Plaintiff. *Ex. C: Cameron Dep. 3-16-22,* p. 250:10-11.

**Plaintiff's Response:** Undisputed for purposes of this motion.

88. At no point did Defendant Stebbins physically injure Plaintiff. *Exhibit Q: Plaintiff's Answers to Interrogatories,* p. 2-6.

**Plaintiff's Response:** Undisputed for purposes of this motion.

**ENFIELD DEFENDANT'S STATEMENTS AND PLAINTIFF'S RESPONSES**

1. On May 22, 2018, Steven Stebbins approached Marcus Cameron at Cameron's house, 49 Foxcroft Road in Enfield, CT, to speak to Cameron about Cameron's driving habits. (*See* Plaintiff's Complaint, attached hereto as Exhibit A, Count I, ¶ 18); (*see also* Deposition Transcript of Steven Stebbins, attached hereto as Exhibit B, p. 31).)

**Plaintiff's Response:** Disputed as to the phrase "habits", which implies a repeated offense. The referenced transcript clarifies that by "driving habits", Defendant Stebbins was only referring to that day (Exhibit B, p. 31: 23-24). The rest of the statement is undisputed for purposes of this motion.

2. On May 23, 2018, Marcus Cameron submitted a complaint against Steven Stebbins to the Connecticut State Police. (*See* Deposition Transcript of Marcus Cameron, attached hereto as Exhibit C, p. 75), *see also* Exhibit A, Count I, ¶ 24.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

3. On May 26, 2018, Steven Stebbins observed Cameron drive by Stebbins' residence at 44 Foxcroft Road in Enfield, CT multiple times in approximately

a five-minute span, back and forth. (Exhibit B, pp. 40-41.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

4. After Cameron drove past Stebbins' house multiple times on May 26, 2018, Stebbins called the Enfield Police Department to document Cameron's actions. (Exhibit B, p. 52.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

5. Cameron went to the Enfield Police Department on May 26, 2018, after he saw an Enfield Police Officer respond to Stebbins' house that day and saw that they spoke with each other. Cameron wanted to find out if a 911 call was placed and what the allegation in the 911 call was . (Exhibit C, p. 87.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

6. On May 26, 2018, Cameron spoke with James Laurino at the Enfield Police Department. There, Sgt. Laurino advised Cameron that Detective Gary Castle was the officer that spoke with Mr. Stebbins. Cameron and Sgt.

Laurino spoke for about 15 minutes, in which Cameron gave his version of events. Cameron declined the opportunity to speak with Detective Castle and was only concerned that these complaints were going to continue and Cameron wanted his version of events documented. (Exhibit C, pp. 91-93.)

**Plaintiff's Response:** Disputed as to Plaintiff's declining to speak to Detective Castle. Detective Castle followed Plaintiff's guest in his police cruiser after he was at Trooper Stebbins' house, which he did not report (Exhibit C, pp. 92:16-25). The record also shows that Plaintiff stated, "I do not think the harassment of Mr. Stebbins would stop if I didn't make reports to the Enfield Police Department", showing that he was concerned about the harassment continuing, not the complaint (Exhibit C, pp. 92:4-6). The rest of the statement is undisputed for purposes of this motion.

7. On May 28, 2018, Cameron was sitting outside of his house at 49 Foxcroft Road with a friend, and they observed Mr. Stebbins drive past the house multiple times, before stopping and getting out at a neighbor's house, but Cameron did not document this interaction with the Enfield Police Department. (Exhibit C, pp. 96, 108.)

**Plaintiff's Response:** Undisputed for purposes of this motion, and Plaintiff will clarify "multiple" in his own statement of facts and argument.

8. On May 30, 2018, Cameron was driving past Stebbins' house when an unidentified male stepped out into the road and asked Cameron something to the effect of "if he was lost." (Exhibit C, pp. 101, 107.)

**Plaintiff's Response:** Disputed. According to the record, the unidentified male was originally in Stebbins' driveway, and he shouted obscenities at the Plaintiff (Exhibit C, pp. 101:15-20, 107:1-2, 12-14).

9. After this incident, Cameron went to the Enfield Police Department for their assistance in identifying the individual who stepped out into the road and to possibly pursue charges for obstructing traffic. (Exhibit C, pp. 108-109.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

10. At the Enfield Police Department, Cameron met with Lt. Mark Squires. Cameron did not provide his full name because Lt. Squires never asked for his full name, despite Cameron feeling like a victim of harassment. Lt. Squires made this report for documentation purposes only. (*See* Enfield Police Department Incident Report from 5/30/2018, attached hereto as Exhibit D); (Continued Deposition Transcript of Marcus Cameron, attached hereto as Exhibit E, pp. 208-210); (Deposition Transcript of Mark Squires,

attached hereto as Exhibit F, pp. 21-22.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

11. Cameron did not have any interactions with Enfield Police Department, Bryan Nolan and/or Mark Squires from May 30, 2018, until November 12, 2018. (Exhibit E, pp. 210-211.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

12. On October 11, 2018, Troop H Commanding Officer Lt. Daniel Loughman of the Connecticut State Police sent Cameron a letter informing him of the results of the Internal Affairs Complaint Cameron filed against Stebbins. The report concluded that although Stebbins failed to identify himself to Cameron when he should have, the investigation failed to substantiate Cameron's claim that Stebbins threatened Cameron. (*See* October 11, 2018 Letter to Marcus Cameron, attached hereto as Exhibit G.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

13. On November 12, 2018, Stebbins was leaving his residence at 44 Foxcroft Road in Enfield, CT observed Cameron walking down his driveway at 49 Foxcroft Road and enter a vehicle parked on the road. (*See* Steven Stebbins' Statement to Enfield Police Department on November 13, 2018, attached hereto as Exhibit H, p. 1.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

14. Stebbins noticed the vehicle Cameron got into was following behind him as they drove through their neighborhood, so Stebbins took a left onto Colony Road and immediately pulled over to ascertain if Cameron was going to stop behind him or continue on driving. (Exhibit H, p. 1.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

15. Cameron drove past Stebbins but then pulled over onto the right side of the road ahead of Stebbins. (Exhibit H, p. 1.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

16. Stebbins, utilizing the MDT in his vehicle, ran the registration plate attached to the vehicle that was following him, and the results showed that the vehicle was registered to Marcus Cameron. Stebbins then became concerned about why Cameron was following him. (Exhibit H, p. 1.)

**Plaintiff's Response:** Disputed as to Stebbins' concern about Cameron "following him," Plaintiff disputes that the record indicates as much, and will address this in his additional statement of facts and argument.

17. Stebbins pulled away from the side of the road, went around Cameron's vehicle that was pulled over, and ultimately took a right onto Route 5 (Enfield St.) to head north to I-91. (Exhibit H, pp. 1-2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

18. As Stebbins was traveling north on Route 5, he noticed Cameron's vehicle was behind him, so Stebbins pulled into the 360 Federal Credit Union parking lot to ascertain if Cameron would follow him. (Exhibit H, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

19. Stebbins saw Cameron's car continue north on Route 5, and after about 90 seconds, Stebbins pulled back out onto Route 5 to continue his route to I-91 southbound. (Exhibit H, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

20. As Stebbins was traveling northbound on Route 5, he observed Cameron's vehicle in a parking lot on his left, which housed Fallon & Associates, LLC. (Exhibit H, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

21. Stebbins continued northbound on Route 5, lost sight of Cameron's vehicle behind him, and then Stebbins took a left onto the I-91 southbound ramp, pulling over onto the shoulder to see if Cameron would drive past him. (Exhibit H, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

22. A short time later, Stebbins observed Cameron's vehicle enter the I-91 southbound on-ramp and traveled past Stebbins' parked vehicle. (Exhibit H, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

23. Stebbins waited roughly 90 seconds and then re-entered the highway. As he entered the highway, Stebbins merged into the left lane of three lanes. There, he noticed Cameron's vehicle pulled over on the right shoulder with its hazard lights activated. (Exhibit H, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

24. As Stebbins passed Cameron's vehicle, Cameron turned his hazard lights off, and Cameron merged into the right lane of three on the highway. (Exhibit H, p. 2.)

**Plaintiff's Response:** Disputed. As the record reflects, Plaintiff did not turn his hazards off as Trooper Stebbins passed, but several seconds later (Exhibit H, p. 2).

25. Stebbins contacted his supervisor, Sgt. Stephen Samson, and asked for guidance. Sgt. Samson told Stebbins to contact the Enfield Police Department. (Exhibit H, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

26. Stebbins merged over to take the Exit 47E off-ramp and contacted Enfield Police Department dispatch. He informed dispatch that Marcus Cameron was following him and requested dispatch send an officer towards his location, as Stebbins did not know what Cameron's intentions were. (Exhibit H, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

27. As Stebbins traveled through the intersection of Route 190 and Phoenix Avenue, he observed Cameron's vehicle was still behind him, and Cameron's vehicle was stopped at the red light at the intersection Stebbins just passed through. (Exhibit H, pp. 2-3.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

28. At this point, Stebbins advised the Enfield Police Dispatcher that he was turning into the Brookfield Plaza shopping center to await the arrival of the Enfield Police officers. (Exhibit H, p. 3.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

29. As Stebbins was waiting for the Enfield Police officers to arrive, he observed Cameron's vehicle parked in the shopping center's parking lot to his left but did not see Cameron exit his vehicle. Enfield Police officers arrived on scene and Stebbins' call with the dispatcher ended. (Exhibit H, p. 3.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

30. Enfield Police Sgt. Nolan arrived at Brookside Plaza in response to patrol units requesting a supervisor because an off-duty Connecticut State Police Trooper had called and requested assistance as he was being followed by a former neighbor. (See Enfield Police Department Incident Report IR201835065, attached hereto as Exhibit I, p.2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

31. Upon Nolan's arrival, he was briefed by Enfield Police Department personnel already on scene. Nolan was informed that Stebbins had been the subject of a CSP Internal Affairs investigation due to a complaint filed by Cameron; that Stebbins and Cameron were neighbors; that the complaints filed by Cameron were found to be unfounded by the State Police investigation; they suspected Cameron may have recently been notified about the status of his case; and Stebbins stated that Cameron had been following him while Stebbins was in his department issued cruiser. (Exhibit I, p. 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

32. When Nolan asked Cameron why he was following Stebbins, Cameron stated that he felt uncomfortable around Stebbins, and was pulling over to let Stebbins go around him. (Exhibit I, pp. 3-4.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

33. Cameron stated he pulled over on the side of I-91 to use his phone. (Exhibit

I, p. 5.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

34. When Cameron spoke to Enfield Police Officer Croteau, who responded to Brookside Plaza before Sgt. Nolan did, Officer Croteau informed Cameron that he was "absolutely not" under arrest. (Exhibit E, p. 294.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

35. At the end of Nolan's conversation with Cameron, Cameron provided his cell phone number so Nolan could follow-up with him, and Nolan informed Cameron that he was free to go. (Exhibit I, p. 5.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

36. A supervisor was requested to respond to Brookside Plaza at approximately 1455 on November 12, 2018, prolonging the interaction with Cameron. (See Bryan Nolan's Affidavit for an Arrest Warrant Application, attached hereto as Exhibit J, ¶ 2.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

37. When Nolan spoke to Cameron at Brookside Plaza, Cameron did not appear overly nervous to Nolan. (See Deposition Transcript of Bryan Nolan, attached hereto as Exhibit K, p. 31.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

38. On November 13, 2018, Stebbins provided Nolan with a written statement and the In-Car Camera footage from Stebbins' cruiser, which Nolan reviewed. (Exhibit I, pp. 2, 5-6.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

39. Cameron was not present at the Enfield Police Department when Stebbins gave Nolan his written statement. At the time Stebbins gave Nolan his written statement, Cameron was not aware of the content in Stebbins' written statement. (Exhibit E, pp. 229-230.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

40. On November 15, 2018, Cameron and Nolan spoke briefly on the phone, but the call ended up getting disconnected. (Exhibit E, pp. 215-216.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

41. Nolan tried calling Cameron back on November 15, 2018, multiple times, but was not able to connect, and left Cameron a voicemail. Nolan left Cameron a voicemail on November 19, 2018, stating that he needed to speak with Cameron about the incident, and to call him back, but Cameron did not return his call. (Exhibit J, ¶ 15.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

42. Cameron recalls Nolan leaving him a voicemail at some point after November 15, 2018, but does not recall when. (Exhibit E, p. 217.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

43. On November 20, 2018, Nolan went to Cameron's residence at 49 Foxcroft Road, and although there was a vehicle in the driveway and lights on in the house, nobody answered the door. (Exhibit J, ¶ 15; *see also* Exhibit E, p. 219.)

**Plaintiff's Response:** Disputed. Plaintiff was not at his Connecticut property (he did not reside there) at the time as his primary residence is in Massachusetts. (Exhibit E, p. 219:3-5,10-20; 247:13-15).

44. Nolan tried calling Cameron's cellphone again on November 26, 2018, but did not get an answer, and left a voicemail. The voicemail message states it is in fact Cameron's voicemail. Cameron did not return Nolan's call. (Exhibit J, ¶ 15.)

**Plaintiff's Response:** Disputed. Plaintiff states that he "only heard one voicemail left by Bryan Nolan and again in that voicemail, he never mentioned anything about needing to contact me about getting a statement". (Exhibit E, p. 220:19-24).

45. Nolan based his opinion that Stebbins was in reasonable fear of Cameron from Stebbins' statement that he gave to Nolan on November 13, 2018. (Exhibit K, pp. 83-84.)

**Plaintiff's Response:** Disputed, as Nolan did not articulate what fear he believed Stebbins to be in. Plaintiff addresses this in his additional statement of fact and argument.

46. Nolan believed that probable cause existed to charge Cameron with 3rd Degree Stalking based on Stebbins' sworn statement and other information Nolan had available to him at that time. (Exhibit K, pp. 85-86.)

**Plaintiff's Response:** Disputed. The "other information available" is unknown and was not provided, nor did Nolan specifically articulate how he actually formed the basis of probable cause.

47. Nolan did not penalize Cameron when making his determination of probable cause because Cameron did not provide Nolan with Cameron's version of events. (Exhibit K, pp. 88-89.)

**Plaintiff's Response:** Disputed. As it stands, Defendant Nolan stated that "…without that story, I believed I had probable cause" (Exhibit K, pp. 89:1-2). Plaintiff stated he never received the voicemail regarding a statement (Exhibit E, p. 220:19-24). Plaintiff addresses Nolan's consistent references in his testimony to Plaintiff's lack of making a statement in his additional statement of facts and

argument.

48. Nolan included Stebbins' entire written statement—including the details of Stebbins' and Cameron's previous interactions—in the Arrest Warrant Affidavit, because that is what was provided to Nolan, and Nolan would have included a written statement from Cameron if Cameron provided him one. (Exhibit K, p. 91.)

**Plaintiff's Response:** Disputed, as Nolan did not include many police reports made by Cameron in his report. Plaintiff addresses this in his argument and additional statement of fact.

49. The inclusion of Cameron's complaint to Sgt. Laurino at the Enfield Police Department on May 26, 2018, would not change Nolan's determination of probable cause if it was included in the Arrest Warrant Application. (Exhibit K, pp. 105-106.)

**Plaintiff's Response:** Undisputed as to Nolan having already made up his mind to charge Plaintiff with a crime regardless of what Plaintiff presented to him, however Plaintiff's complaint was relevant and available. In his deposition, Defendant Nolan stated, "Looking back, I would think that's very relevant…" (Exhibit K, pp.106:8-

16).

50. A statement from Sgt. Laurino six months prior to November 2018, that he believed the incidents between Cameron and Stebbins were a waste of time, would not impact Nolan's determination of probable cause from the November 12, 2018 incident. (Exhibit K, pp. 111-112.)

**Plaintiff's Response:** Undisputed as to Nolan having already made up his mind to charge Plaintiff with a crime regardless of what Plaintiff presented to him, however plaintiff disputes the premise that it would be reasonable for Nolan to remain determined to charge Plaintiff.

51. Sgt. Nolan, seeing that Cameron made a second complaint to the Enfield Police Department about Stebbins on May 30, 2018, does not change Nolan's view that Stebbins' fear of Cameron on November 12, 2018, was reasonable. (Exhibit K, p. 123.)

**Plaintiff's Response:** Disputed in that Nolan did not articulate what fear he supposedly believed Stebbins to have. Plaintiff addresses this in his additional statement of fact and argument.

52. As part of his duties as a lieutenant, Squires would typically review most of the officers' and sergeants' reports on the shift, but it was not required. Squires would review an affidavit of an arrest to make sure it is prepared for Court, that probable cause exists, and the supporting documents are attached. (Exhibit F, pp. 24-26.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

53. When there is a long history between two parties, not every interaction has to be included in an arrest warrant. (Exhibit F, pp. 36-37.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

54. Cameron's complaint to the Enfield Police Department on May 30, 2018, may have been overlooked because Cameron did not identify himself to Squires on that date, so Cameron's name could not have been entered into the key for identifiable information. (Exhibit F, pp. 36-37.)

**Plaintiff's Response:** Disputed. The evidence listed does not reflect that Plaintiff did not identify himself being the reason his name was not in the key.

55. Squires did not find it over-urgent that Nolan's Arrest Warrant Affidavit did not include the fact that Cameron came into Enfield Police Department on May 30, 2018 and spoke with Squires. (Exhibit F, p. 38.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

56. Stebbins and his family moved from their Foxcroft Road home as a result of Cameron's actions being very troublesome and have instilled fear for the safety of Stebbins' family, wife and himself. (Exhibit H, p. 4.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

57. Stebbins is concerned that Cameron, working as a probation officer, has access to probationees, and Stebbins fears that Cameron will use that access to intimidate, harass and endanger the physical safety of Stebbins and his family. (Exhibit H, p. 4.)

**Plaintiff's Response:** Disputed. Plaintiff worked at the Massachusetts Probation Office, not Connecticut. Further, Defendant Stebbins was only aware of Plaintiff's

occupation due to a Google search, not relating to any threats made by the Plaintiff regarding probationees. (Exhibit H, p. 4.)

58. Nolan signed the Arrest Warrant Application on December 5, 2018, requesting Cameron be charged with 3rd Degree Stalking for Cameron's actions on November 12, 2018. (Exhibit J.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

59. The Arrest Warrant Application was notarized by Lt. Squires on December 5, 2018. It was signed by the prosecutorial official on December 6, 2018, and signed by the judge on December 10, 2018. (Exhibit J.)

**Plaintiffs' Response:** Disputed. The evidence cited does not support the statement of fact.

60. On December 11, 2018, Cameron was arrested by Enfield Police Officer Brandon Caires, pursuant to an active arrest warrant, which was signed off on by a prosecutor and a judge. (Exhibit E, p. 282; see *also* Exhibit J.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

61. Officer Caires was the individual who physically put the handcuffs on Cameron, with Nolan and other Enfield Police officers present on scene. (Exhibit E, p. 222.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

62. Cameron stated that the handcuffs were too tight and suffered striations on his wrists from them. Cameron never sought any medical treatment for the striations on his wrists, and never received any medical treatment for the striations on his wrists. (Exhibit E, pp. 225-227.)

**Plaintiff's Response:** Disputed. Plaintiff's injuries did not require a hospital visit, that does not mean the injuries did not occur. In his deposition, Plaintiff states, "I didn't think that the impact and the striations from the handcuffs on my hands had me in a position where I need to go to the hospital" (Exhibit E, pp. 227:7-11).

63. Cameron never had any physical contact and/or touching between himself and Bryan Nolan, or between himself and Mark Squires. (Exhibit E, pp. 225-

227.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

64. As part of Cameron's arraignment, he was entered into an accelerated rehabilitation program. This program did not require an admission of guilt on Cameron's behalf. (Exhibit E, pp. 231, 240.)

**Plaintiff's Response:** Disputed. Plaintiff was entered into a program, but he did not have to physically attend anything. Per Plaintiff's deposition, he also "didn't have to attend like an actual program or rehab or anything like that" (Exhibit E, pp. 231:17-23).

65. Throughout Cameron's post-arrest process and arraignment, Cameron never challenged the finding of probable cause in his Arrest Warrant Application that ultimately led to his arrest. (Exhibit E, p. 232.)

**Plaintiffs' Response:** Disputed. The evidence cited does not support the statement of fact.

66. Cameron has no knowledge of the Enfield Police Department hiring practices. (Exhibit E, p. 230.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

67. Cameron has no knowledge of the training requirements the Enfield Police officers have to complete. (Exhibit E, p. 230.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

68. Cameron has no knowledge of the specific field training programs the Enfield Police Department requires. (Exhibit E, p. 230.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

69. Sgt. Nolan participated in implicit bias training for the Enfield Police Department. (Exhibit K, p. 189.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

70. The fact that Cameron was African-American did not change the way Nolan approached the situation between Cameron and Stebbins. (Exhibit K, p. 191.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

71. Nolan believed the race of Cameron was irrelevant in this incident between Cameron and Stebbins. Nolan viewed it as a neighborly dispute. Nolan does not factor race into his decisions unless there was an incident that revolved around race or had a racial component. (Exhibit K, pp. 192-193.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

72. On scene at Brookside Plaza, Cameron requested a supervisor from Enfield Police Department to show up, which is how Bryan Nolan ended up responding to the scene. (Exhibit E, p. 291.)

**Plaintiff's Response:** Disputed. Defendant Nolan explains that a supervisor must come to the scene when an active-duty police officer is involved. In his deposition,

Defendant Nolan states, "I was dispatched there to Brookside because there was a state trooper involved" (Exhibit K, pp. 25:7-14).

73. Cameron was never placed under arrest at Brookside Plaza. (Exhibit E, p. 291.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

74. Sgt. Nolan did not place Cameron under arrest at Brookside Plaza because he felt that more of an investigation was needed before an arrest could be made. (Exhibit K, pp. 48-49.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

75. Stebbins applied for a protective order against Cameron on November 13, 2018. (Exhibit B, p. 147.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

76. The first hearing for Stebbins' protective order was on November 23, 2018. (Exhibit B, p. 150.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

77. The second and final hearing for Stebbins' protective order, where it was ultimately denied, was on December 14, 2018. (*See* Protective Hearing Transcript, attached hereto as Exhibit L.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

78. Nolan has undergone recertification training for racial bias and equal opportunity for the POST recertification every three years, as required for all Connecticut law enforcement officers. (Exhibit K, pp. 13-14.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

79. Squires attended the Police Academy in 1999, then a 16–20-week field training program with the Enfield Police Department, and would participate in recertification training every three years. (Exhibit F, p. 11.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

80. Cameron acknowledged that Defendant Nolan left him a voicemail at some point after November 15, 2018, but he does not recall other alleged attempts by Nolan to contact him, such as a phone call from Nolan on November 19, 2018. (Exhibit E, pp. 217-218.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

81. Cameron believes that Nolan lied in his affidavit accompanying the Arrest Warrant Application to arrest Cameron when the affidavit stated that there was construction in Cameron and Stebbins' neighborhood which caused Stebbins to drive past Cameron's residence. (Exhibit E, p. 275.)

**Plaintiff's Response:** Disputed. A lie would arise from the fact that Defendant Nolan stated that he used Defendant Stebbins' statement to write his warrant, and Defendant Stebbins did not mention construction as the cause for driving past Plaintiff's residence in his statement (Exhibit E, pp. 275:16-276:6, *see also* Exhibit H).

82. Cameron denied ever having received a letter from Lt. Cooke of the Connecticut State Police informing Cameron of the Internal Affairs investigation decision regarding the complaint Cameron filed against Stebbins. (Exhibit E, pp. 280-281.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

83. The Arrest Warrant Application states that Connecticut State Police Internal Affairs Lt. Eric Cooke mailed Cameron a letter on October 11, 2018, informing Cameron of the completion of the Internal Affairs investigation based on the complaint Cameron filed against Stebbins. (Exhibit J, ¶ 17.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

84. In Count V of the plaintiff's complaint, he alleges that the defendants, Bryan Nolan, and Mark Squires, engaged in defamatory actions by repeating Steven Stebbins' allegedly false statements in an Arrest Warrant Application for Cameron, that he was speeding, drove dangerously, and engaged in stalking. (Exhibit A, ¶¶ 89, 91.)

**Plaintiff's Response:** Undisputed for purposes of this motion.

Plaintiff, by his attorneys:

/s/ Michelle S. Cruz
Michelle S. Cruz, Esq.
Law Offices of Michelle S. Cruz
35 Center Street, Suite 35
Chicopee, MA 01013
(413) 592-9400
Cruz4law@gmail.com
Juris: 428425

/s/ Ryan P. McLane
Ryan P. McLane, Esq.
McLane & McLane, LLC
269 South Westfield
Feeding Hills, MA 01030
(413) 789-7771
ryan@mclanelaw.com
Juris: 438176