**16.10.5** **Traffic Stop Procedures**

CALEA 61.1.7
CALEA 1.2.7

**a.** **Routine traffic stops**

Although most traffic stops are completed without incident, troopers must recognize that each and every traffic stop has high risk potential for police officers because of the possibility of death or injury to the officer during a routine traffic stop.

(1) During the ten year period between 1983 and 1992 only arrest situations (273), disturbance calls (124) and suspicious persons or circumstances (106) caused more police officers to be killed as a result of assault than did traffic pursuits or stops (95) (Table 14, Law Enforcement Officer Feloniously Killed, 1983 - 1992, Circumstances At Scene Of Incident By Region, Uniform Crime Reports, Law Enforcement Officers Killed and Assaulted 1992, U.S. Department of Justice, Federal Bureau of Investigation).

(2) During the same ten year period, of 669 police officers accidentally killed, 317 were killed as a result of motor vehicle accidents, and 75 were struck and killed by other vehicles while directing traffic or assisting motorists, etc. (ibid., Table 23, Law Enforcement Officers Accidentally Killed 1983-1992, Circumstances At Scene Of Incident).

**b.** **Routine stop and approach methods initiated or attempted from a moving vehicle**

(1) **Attempt to close with the violator's vehicle**

(a) A trooper must always be concerned for the safety of himself, the public and violator while closing the distance between vehicles or while in pursuit (See A&O Sec. 13.7).

(b) Be alert to safety hazards.

1. Traffic and road conditions;

2. Presence of pedestrians;

3. Possible mechanical failure of either vehicle.

(2) **Select a safe stopping place, if possible**

(a) Try to select a safe place for the violator to stop, but remember that the violator may not stop exactly where you want him to.

(b) Attempt to avoid:

1. Intersections

2. Curves

3. Crest of a hill

4. Narrow bridges

5. Inadequate shoulder space beside a roadway

(c) If the motorist stops in an unsafe location, direct him to move to a safe area ahead, preferably by using the vehicle public address system.

(3) **Stop the vehicle**

(a) Position your vehicle for signaling;

(b) Use available cruiser lights and the siren to signal the violator;

(c) If so equipped, ensure that the vehicle's Mobile Video Recorder is activated in accordance with A&O Section 13.15, inclusive;

(d) Try to avoid pulling alongside the violator's vehicle;

(e) Stop behind the violator about 8-15 feet to the rear and offset to the left about 2-3 feet.

(f) At night shine your spotlight into the driver's area to light up the inside of the vehicle and to render the rearview and left side mirrors useless.

(g) Turn your front wheels to the left to afford some protection or cover.

(4) **Call the traffic stop in to a troop**

(a) All traffic stops shall be called in whenever working alone, conditions permitting, preferably before the stop is actually accomplished to decrease the time waiting for the troop to respond with information.

(b) If possible, wait for the troop to respond with wanted or stolen vehicle information (If unable to wait, at least the violator's information will be on audio tape).

(c) Use an outside speaker or portable radio to maintain car to troop communications.

(d) When on a multi-enforcement event, it is suggested that you call in each registration for a stop and also each change of location.

(5) **Gather available information**
Prior to approaching a violator's vehicle:

(a) Study the vehicle occupants

1. How many are in the vehicle?

2. Where are they seated?

3. Are there furtive or unusual movements?

(b) Study the vehicle

1. Are all doors closed?

2. Is the trunk closed tightly and is there a lock assembly in the trunk lid?

(c) Write on a clipboard the registration and a brief vehicle description.

(d) If not equipped with a portable radio consider leaving the radio microphone outside the driver's door and behind the mirror for easy access from outside.

(e) Unlock your passenger door so you can get in to the radio from the right side.

(f) Check rearview mirrors before exiting the vehicle for approaching traffic and momentarily look to the rear of your vehicle as you begin to exit.

(g) It is not required that you wear your uniform hat during the initial traffic stop, but it will be worn whenever subsequently approaching the vehicle.

(6) **Approach the vehicle**

(a) Approach the vehicle from the left or right side.

1. Right side approaches offer some surprise and maximum protection from passing traffic.

2. Right side approaches are sometimes the only viable approach when shoulders and breakdown lanes do not allow sufficient protection from passing traffic from the left side.

3. Left side approaches place you near the violator quicker and affords a closer observation of the violator's area of control.

CALEA 41.3.5

(b) Patrol troopers should wear available body armor.

(c) As you approach the vehicle, consider a three-step approach method:

1. Step 1: Stop and check the trunk area; is it tightly closed and when touched, is there any unusual movement?

2. Step 2: Proceed forward, stop and check the passenger area, rear seat and rear floor areas.

3. Step 3: Proceed just to the rear of the front door and stop so that the driver's door can't be swung open to knock you off balance or into lanes of passing traffic.

4. Once you have proceeded to this point and checked the driver's hands and front interior areas of the vehicle, you may want to switch to the front of the driver's door if you are on the driver's side so that you can observe the violator and passing traffic more easily.

5. If a right side approach is used it is not usually necessary to face backward for traffic, but you should consider remaining slightly to the rear of the driver to take advantage of cover provided by vehicle door posts, doors, and seats.

6. Be sure that you can see the hands of the violator and any passengers at all times.

(7) **Multiple occupant vehicle approach method**
For a multiple passenger vehicle perceived as a low risk situation for one or two troopers:

(a) Position yourself behind the right or left rearmost passenger door;

(b) Observe all vehicle occupants to determine if there are weapons, contraband or furtive activity within the vehicle;

(c) Divide your attention between the hands of the person closest to you, usually the driver, and the activities of all others within the vehicle;

(d) Keep your gun hand free whenever possible;

(e) Do not focus on one person and disregard all others;

(f) Do not hold a flashlight at night directly in front of your body;

(g) Do not approach abreast of each other, it prevents clear fields of fire for both troopers;

(h) If you are approaching the right side of the vehicle especially at night, do not walk in front of your headlights and between the vehicles. If it is necessary to approach from the right side, walk behind your vehicle to make your approach;

(i) Try to avoid placing your hands inside the violator's vehicle;

(j) If the vehicle or its occupants appear risky or a vehicle search is necessary, call for and await back-up;

(k) Attempt to keep all occupants inside the vehicle for safety reasons;

(l) Constantly refocus your attention between traffic, the vehicle, and its occupants.

(8) **Return to your vehicle and take enforcement action**

(a) Don't forget to watch the vehicle and its occupants and passing traffic as you make your way to and from your cruiser;

(b) While inside your vehicle, constantly watch the vehicle occupants (Use sight and sound);

(c) Do not allow an occupant to exit the violator's vehicle and approach you;

(d) When re-approaching the vehicle, use the same degree of caution as before;

(e) Deliver the violator's paperwork, include the summons or warning, if any, and briefly explain violator's options in response to a summons or written warning;

(f) Do not become argumentative. It is not uncommon for a violator to feel angry, confused or fearful.

(9) **Complete the stop**

(a) Assist the violator to merge safely into the flow of traffic.

(b) Clear the event, reporting the action taken and return to service.

(10) **Other problems during routine traffic stops**

(a) **Conducting interviews outside of vehicles**
Although allowing a violator to be outside his vehicle is normally discouraged because of safety considerations, if it must be done, conduct an outside interview well away from the traveled portion of the highway.

(b) **Stopping large vehicles**

1. Stopping large vehicles such as tractor trailers should be done in a location which affords adequate shoulders for both vehicles, a long line of sight for approaching traffic and no interference with the flow of traffic.

2. Because of the dangers involved in walking along the traffic side of a tractor trailer or similar vehicle, the cruiser should be parked in the rear, whenever possible and an approach should be from the right side, away from passing traffic.

3. Direct the truck driver to exit from the cab on the right side bringing his paperwork with him. Do not stand below the driver talking up to him or climb up on the cab, especially on the traffic side of the vehicle.

(c) **Claims of life threatening or personal emergencies**

1. **Keep delays to a minimum**
When a motorist is stopped for a traffic violation resulting from a genuine emergency, the motorist should be delayed only long enough for the trooper to obtain operator license and registration information.

2. **Try to determine the true nature of the emergency**
The trooper should determine the true nature of the emergency. If time does not appear to be a critical factor, normal enforcement procedures shall be followed. If time is critical, but enforcement action is appropriate, enforcement will be delayed until the emergency is resolved.

[a] The operator may proceed after being advised that a summons will be mailed to him or her.

[b] The summons shall be mailed to the accused by certified mail, return receipt requested, with the enclosed letter of transmittal signed by the trooper's commander.

[c] Advise the operator to proceed cautiously and to obey all traffic laws.

CALEA 61.3.3b

3. Troopers shall not escort the vehicle without permission from a supervisor.

(d) **Ordering occupants from the vehicle**

1. Ordering the driver or traffic violator from a vehicle has been long established as a proper technique to further observe his behavior, limit access to weapons or to request the operator to take field sobriety tests.

2. Ordering passengers from a stopped vehicle has been permitted by the U.S. Supreme Court in its decision in Maryland v. Wilson, (1997) because of concerns for officer safety primarily because once outside the vehicle, passengers would be prohibited from further access to any weapons, which would harm the officer.

[a] There must be some level of reasonable suspicion in regard to the passenger(s) conduct;

[b] Any passenger ordered from the vehicle must not be endangered in the roadway, paying due regard to the weather and traffic conditions and the availability of a safe place to await completion of the stop.

[c] The issue of forced detention was not addressed in this case, therefore a reasonable suspicion would be necessary for the forcible removal of a passenger, i.e., a "Terry Stop" or pat-down for weapons required to ensure officer safety (Training Bulletin 97-3).

c. **High risk traffic stops or "felony stops"**
Whenever a high-risk traffic stop develops:

(1) Call in your location, a vehicle description, request back-up, and if time permits, briefly describe your circumstances.

(2) Request a Code A, especially if the suspect was reported involved in a violent crime or is suspected to possess a deadly or dangerous weapon.

(3) Request immediate assistance and, if possible, follow at a safe distance until one or more back-up unit arrives.

(4) Make the stop using your vehicle for cover and with the public address system direct occupants from the car, hands behind the head, one at a time, driver first, to lie face down in the space between vehicles.

(5) Do not approach the vehicle alone unless the driver is the only occupant and there is no back-up available to assist you.

(6) Try to avoid taking your eyes away from the vehicle, except for very brief periods of time.

(7) If assisted, designate one or two back-up troopers to handcuff and remove each individual to a secure area, one at a time, while covered by other troopers.

(8) When all suspects and weapons are secured cancel the Code A.

d. **Routine stop and approach methods from a stationary vehicle position**

(1) **Stopping an approaching motor vehicle**
Most often this type of stop occurs when a trooper is monitoring the speed of passing traffic with radar or another speed monitoring device.

(a) On any highway try to place your vehicle facing so that the direction of the lane of traffic closest to your vehicle corresponds with the direction your vehicle is facing.

(b) Although on a two-lane highway, you may be able to monitor the speed of traffic in both directions, primarily, you will monitor the traffic, which approaches from your rear. This will lessen the need to cross one or more lanes of traffic to catch up with a violator.

(c) **Other vehicle placement considerations**

1. **Maintain adequate line-of-sight distances**
Allow sufficient line-of-sight distances from curves and hilltops so that approaching drivers aren't unnecessarily alarmed or startled by your vehicle position and will be less likely to swerve, brake suddenly, or perform some maneuver that would be dangerous to you, themselves, or others.

2. **Weather and visibility**
Consider conditions of weather and other factors, which limit visibility so that drivers following behind the violator might not see you attempt to merge into traffic.

3. **Use available space on the roadside as a safety cushion**
Do not place your vehicle alongside a guardrail or barrier or park in any manner, which would not afford you an escape route or a reasonable amount of room to pull away from the travel portion of the highway in order to avoid passing traffic. Allow yourself a margin of error in selecting where to park that is likely to take into consideration an approaching driver who may be inattentive, DUI, or inexperienced who may drift over the line and collide wit h your parked vehicle.

4. **Be ready for unexpected dangers**
Remember that many drivers unconsciously steer toward the direction in which they are looking, and that if they are looking at your vehicle and especially your emergency lights, they may have to consciously steer away to avoid colliding with you.

5. **Sitting in your car**
If you are monitoring radar from within your vehicle and using your vehicle to pull the violator over, consider use of the following techniques:

   [a] Your seat belt should be fastened in case your vehicle is struck to prevent injury or ejection;

   [b] Keep the engine running with the car in gear so that the vehicle can rapidly move out of the way;

   [c] Place your foot on the brake with the front wheels pointing to the front or slightly to the right so that if your vehicle is struck it will not be pushed into the roadway and in the path of another passing vehicle.

6. If you are flagging vehicles down from outside your stopped vehicle:

   [a] Avoid walking into traffic lanes whenever possible. Use the shoulder or breakdown lane if there is one. Do not unnecessarily place yourself at any greater risk of being killed or injured than is necessary;

   [b] Try to keep your vehicle between you and approaching traffic;

   [c] Use available emergency lights whenever possible to draw attention to yourself and your vehicle;

   [d] Remember that the public will usually become alarmed whenever a trooper is perceived as taking unnecessarily dangerous risk and this perception often will result in a citizen's complaint against you.

   [e] Also remember that, although most people will stop for you, some persons won't. It is likely that at some point in your career you will attempt to stop a traffic violator who is in fact a dangerous fleeing felon, a drunk driver, someone who has just violated his or her parole or who just has gotten out of prison and would not hesitate to run over you;

7. Do not take unnecessary risks.

**e.** **Off-duty and plainclothes motor vehicle stops**

(1) Notify the troop that you are not in uniform.

(2) Present your badge and picture identification and verbally identify yourself as a trooper, i.e., "I am Trooper Jones of the Connecticut State Police."

(3) If the operator expresses doubts about your identity, offer to request the presence of a uniformed trooper if the motorist wants to wait for him or her to arrive.

(4) Consider that some motorists may drive off in order to go to a safer place or to find a police station or uniformed police officer.

**9.1.4** **Reporting Traffic Stops**

CALEA 81.2.5a **a.** **Communicate prior to approaching a motor vehicle**
Before stopping or approaching a motor vehicle, a trooper / officer shall contact the dispatch center of the troop with operational control over the area where the stop is made and provide the following information:

(1) **Trooper identification and radio signal numbers;**

(2) **Location of the stop and direction of travel**;

(3) **Registration number of the vehicle**;

(4) **Duty status, if not on duty**;

(5) **Reason for the stop if not a traffic violation**;

Example:
"364 to Troop F with a Signal 12"
Troop F - "Go ahead 364" ....
"Signal 12, Northbound on Route 9 at Exit 3 in Essex, Connecticut YV-4425"
"Roger 364"

**b.** **Approach the motor vehicle**
Only after the troop acknowledges the transmission, should the trooper approach a motor vehicle.

(1) After receiving identification documents, the trooper will return to his or her assigned vehicle.

(2) **Violators will not usually sit within a department vehicle**.
Violators should remain in their own vehicle for safety reasons.

(3) The desk officer shall obtain the available NLETS and NCIC / COLLECT information for all motor vehicle contacts, including traffic stops, checking registration/VIN numbers for disabled and abandoned vehicles and for evading vehicles.

(a) NLETS/NCIC, COLLECT queries shall provide:

1. Stolen vehicle / stolen plate information;

2. Wanted/Missing & other Person File checks on a registered owner only and;

3. Registration data.

(b) The desk officer shall provide the trooper with:

1. Positive or negative result regarding vehicle or operator wanted files;

2. Verification of the year, make and color of the vehicle;

3. Status of the registration and month & year of expiration.

(c) Further inquiries may be made into COLLECT/NCIC, I-CAD, I-LEADS or SPIN at the request of the trooper or at the initiation of the desk officer.

**c.** **After completing the motor vehicle stop**
Once enforcement action has been taken and contact with the violator has ended, the trooper will advise:

(1) That the scene is clear;

(2) Type of enforcement action taken (no action, issuance of a written warning or summons; and

(3) Statute number for which a summons or warning was issued;

Example:
"364 to Troop F ..., Clear the Signal 12 ...MVA (motor vehicle arrest - summons issued) for 14-219a..."

"Roger 364"

**d. Disabled or unattended vehicles:**

(1) Inform the troop of the location and registration number or description of a disabled or unattended vehicle prior to approach.

(2) Calling on the radio may be delayed when the troop radio is too busy and immediate action is necessary to rectify a hazardous situation, affect an arrest, prevent an escape or care for injured persons.

CALEA 41.2.4 **e. Extended field contacts - clearing the I-CAD Event**
If a trooper involved with a traffic stop or other field contact does not clear within a reasonable period of time (15-20 minutes), or does not respond to a radio transmission from the troop, the following action ***must*** be taken before the event can be cleared from I-CAD:

(1) Dispatch another trooper to the contact location;

(2) Request an adjacent troop to attempt radio contact if the trooper may be in that troop's area;

(3) If a trooper is on general patrol, the desk officer shall telephone the trooper's home or work assignment, taking care not to cause unnecessary alarm.

(4) In all cases, the status of that trooper shall be ascertained before the event is cleared.

(5) Repeated occurrences of this nature by any trooper shall be brought to the attention of the duty supervisor for corrective action.

**f. External radio speakers**
Following an initial contact with a traffic violator or disabled vehicle, if the trooper must leave the department vehicle without a portable radio, the external radio speaker should be activated.